UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERTO RODRIGUEZ,
        Plaintiff,

v.

JETBLUE AIRWAYS CORPORATION,
        Defendant.

Civil Action No. 1:12-cv-11531-RGS

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL
PLAINTIFF'S PRODUCTION OF DISCOVERY**

      Defendant JetBlue Airways Corporation ("JetBlue") has moved pursuant to Fed.

R. Civ. P. 37(a) and Local Rule 37.1 for an order compelling Plaintiff Roberto Rodriguez

("Plaintiff") to produce income tax returns, cellular telephone records and related information,

and bank account, credit card, and medical records.  In support of its motion, JetBlue submits

this Memorandum of Law and the Declaration of Samantha Abeysekera, Esq.

## INTRODUCTION

      This action arises out of Plaintiff's employment with JetBlue.  Plaintiff, a former

Boston-based Inflight Crewmember, or flight attendant, was terminated on October 31, 2011

after he tested positive for alcohol use on duty and then refused to take a second Breathalyzer

test confirming his positive result.  Accordingly, pursuant to JetBlue policy, as well as

regulations promulgated by the Federal Aviation Administration ("FAA") and the Department of

Transportation ("DOT"), JetBlue treated Plaintiff's refusal of the confirmation test as a positive

result, and he was terminated following a short suspension.  Plaintiff, however, claims that he

simply did not take either an initial or confirmatory Breathalyzer test, but rather, that he

collapsed in an epileptic seizure at some point prior to the testing process.  Moreover, Plaintiff

claims that he could not have tested positive for alcohol use on the morning of October 13, 2011

because on October 12, 2011, he "returned to his room between 9:00 p.m. and 10:00 pm . . . was in bed by 10:00 pm . . . [and] did not consume any alcohol after 8:30 p.m." (Complaint ¶¶ 17-18). Plaintiff's Complaint additionally alleges that, during the evening of October 12, 2011, fellow JetBlue Inflight Crewmember Sherae Miranda (referred to in Plaintiff's Complaint as "SM"), who also tested positive for alcohol use and was terminated concurrently with Plaintiff, "stayed out" later than Plaintiff and "later arrived back at [Plaintiff's hotel room] to sleep." (Complaint ¶ 19). Plaintiff further testified to these facts during his deposition, and also stated that on October 12, 2011 he ate dinner by himself while speaking to his cousin on the telephone. (See Abeysekera Decl. Ex. N at 31-33).[1] Contrary to Plaintiff's allegations, JetBlue is in possession of documents, as well as contemporaneous witness statements, establishing that Plaintiff tested positive during the initial test, and then refused to take a confirmatory test before he appeared to experience a seizure.

In connection with his termination, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which, on May 22, 2012, issued a Notice of Dismissal and Right to Sue (finding no violation by JetBlue). On August 17, 2012, Plaintiff filed the instant Complaint. In his Complaint, Plaintiff alleged JetBlue subjected him to disability discrimination and retaliation in violation of the Americans with Disabilities Act (Count I), Massachusetts General Laws Chapter 151B (Count II), Florida Statutes Section 760.10 (Count III), and the Family and Medical Leave Act (Counts IV and V), as well as breached an alleged implied contract between the parties concerning JetBlue's polices regarding Breathalyzer tests, medical leave, and medical treatment (Count VI). In October 2012, Defendant moved to dismiss portions of Plaintiff's Complaint on the basis that Plaintiff failed to exhaust administrative

---

[1] "(Abeysekera Decl.)" refers to the Declaration of Samantha Abeysekera, Esq.

remedies.   On December 20, 2012, the Court granted in part and denied in part Defendant's

Motion to Dismiss, dismissing Plaintiff's retaliation claims in Counts II and III of the Complaint.

The parties have been engaged in discovery, which is nearly complete.   To that end, Defendant

seeks to compel production of information relevant to Plaintiff's claims and JetBlue's defenses.

<u>**DEFENDANT'S DISCOVERY REQUESTS AT ISSUE**</u>

**A.**      <u>**Defendant's Requests Relevant to Plaintiff's Income Following His Termination.**</u>

On April 17, 2013, Defendant served its First Request for the Production of

Documents and First Set of Interrogatories ("First Discovery Requests") on Plaintiff.   (<u>See</u>

Abeysekera Decl. Exs. A, B).   In its First Discovery Requests, Defendant sought, *inter alia*,

information from Plaintiff regarding Plaintiff's employment and income since the cessation of

Plaintiff's employment with JetBlue (Document Request Nos. 4, 12, 13, and 24 and

Interrogatory Nos. 11 and 15).   (<u>See</u> Abeysekera Decl. Exs. A, B).   On June 3 and June 10, 2013,

Plaintiff produced his responses and objections to Defendant's First Discovery Requests.   (<u>See</u>

Abeysekera Decl. Ex. C; Abeysekera Decl. Ex. D).   Thereafter, following communications

between the parties regarding the deficiencies in Plaintiff's responses to Defendant's First

Discovery Requests, which will be further addressed <u>infra</u>, by letter dated October 23, 2013,

Plaintiff supplemented/amended his responses and objections to Defendant's First Discovery

Requests, stating that he will produce his 2011 and 2012 tax returns.   (<u>See</u> Abeysekera Decl. Ex.

I).   Plaintiff, to date, has not produced his tax returns and instead has simply produced copies of

two pay stubs allegedly obtained during Plaintiff's employment with Red Lobster in 2012 and

2013.   (Abeysekera Decl. ¶ 11).   Defendant's requests related to Plaintiff's income are as

follows:

**DOCUMENT REQUEST NO. 4**

Any and all documents that relate or refer to any employment of Plaintiff since the cessation of his employment with Defendant (including any self-employment and any business or consulting work), including, without limitation: invoices for services rendered, correspondence to and from any employer or prospective employer, employment applications, and documents relative to compensation, income and benefits from subsequent employers, which were not produced in response to the above requests.

**DOCUMENT REQUEST NO. 12**

Copies of Plaintiff's federal and state income tax returns, W-2 forms, and any other documents reflecting Plaintiff's income, wages, tips or other compensation for the years 2007 through the present.

**DOCUMENT REQUEST NO. 13**

A fully executed original copy of the tax records authorization attached hereto.

**DOCUMENT REQUEST NO. 24**

Any and all documents concerning any damages Plaintiff intends to seek at the trial of this action.

(Abeysekera Decl. Ex. A at 3, 4, 6).

Moreover, Defendant served interrogatories relevant to Plaintiff's employment and income since the cessation of Plaintiff's employment with JetBlue, to which Plaintiff again responded that his tax returns would be forthcoming.  (Abeysekera Decl. Ex. I at 1-2).   The relevant interrogatories to Plaintiff are as follows:

**INTERROGATORY NO. 11**

State whether Plaintiff made any efforts to seek new employment including self-employment, or any work as an independent contractor or consultant, following the cessation of his employment with Defendant.  If so, state:

a) the name and address of each potential employer, entity or person to whom Plaintiff made application, the date of each such application and the position for which application was made;

b)  the name and address of any employment agency, career counselor or other employment recruiter with whom Plaintiff had contact, including the date and the nature of contact; and

c)  identify each and every document reflecting or relating to Plaintiff's efforts to seek new employment, including self-employment and any independent contractor or consulting work.

## INTERROGATORY NO. 15

Identify any and all sources of income received by Plaintiff during the period from January 1, 2000 to present. For each such source of income, state the amount of income received and the frequency with which each such payment is or was received.

(Abeysekera Decl. Ex. B at 6, 8).

B.    **Defendant's Requests Relevant to Plaintiff's Cellular Telephone, Bank Account, and Credit Card Records.**

In Defendant's First Discovery Requests, Defendant requested information from Plaintiff regarding Plaintiff's cellular telephone number(s) and provider(s) and other records reflecting Plaintiff's activities and whereabouts on October 12, 2011 and October 13, 2011 (Document Request Nos. 31 and 32).  (See Abeysekera Decl. Exs. A, B).  Plaintiff failed to respond to such requests.  (See Abeysekera Decl. Exs. C, D).  On November 13, 2013, Plaintiff testified during his deposition that not only did he not take any Breathalyzer test administered by JetBlue on October 13, 2011, he *could not* have tested positive for alcohol use because instead of going out drinking with a co-worker the night before, he had dinner by himself, spoke with his cousin on the phone, and went to sleep early.   (Abeysekera Decl. Ex. N at 127, 129). Accordingly, immediately following Plaintiff's deposition, Defendant served Defendant's Supplemental Request for the Production of Documents and Supplemental Set of Interrogatories to Plaintiff ("Supplemental Discovery Requests"), which *inter alia* requested Plaintiff's cellular telephone records from October 12, 2011 and October 13, 2011 (Supplemental Document

Request No. 2 and Supplemental Interrogatory Nos. 1 and 2). (See Abeysekera Decl. ¶ 13; Abeysekera Decl. Exs. O, P).   On January 8, 2014, Plaintiff produced his responses and objections to Plaintiff's Supplemental Request for the Production of Documents, in which he refused to respond to Defendant's supplemental requests regarding his cellular telephone records. (See Abeysekera Decl. Ex. S).   On January 6, 2014, having received no records reflecting Plaintiff's activities and whereabouts on October 12, 2011 and October 13, 2011, Defendant served its Second Supplemental Request for the Production of Documents to Plaintiff, which specifically requested documents related to Plaintiff's bank account(s) activity and credit card(s) use on October 12 and 13, 2011.[2]   (See Abeysekera Decl. Ex. R).   To date, Plaintiff has not responded to Defendant's Supplemental Set of Interrogatories to Plaintiff or Defendant's Second Supplemental Request for the Production of Documents to Plaintiff.   (See Abeysekera Decl. ¶ 19).

Defendant's document requests relevant to Plaintiff's cellular telephone, bank account, and credit card records are as follows:

**DOCUMENT REQUEST NO. 31**

Any and all documents, including hotel, taxi, bar, arid/or restaurant receipts, which relate or pertain to Complainant's actions during the evening of October 12, 2011 and the early morning hours of October 13, 2011.

**DOCUMENT REQUEST NO. 32**

Any and all documents, including, but not limited to, emails, Facebook postings, Twitter postings, Instagram postings, receipts, and phone bills, which relate or pertain to paragraph 17 of Plaintiff's Complaint, including the allegation that

---

[2] Although the time for Plaintiff to respond to Defendant's Second Supplemental Request for the Production of Documents has not yet run, because these requests are simply a narrowing of Document Requests Nos. 31 and 32 of Defendant's April 2013 Requests and because Defendant anticipates Plaintiff will (as it did in response to Defendant's April 2013 Requests) object and refuse to produce responsive documents, Defendant respectfully requests the Court order the production of the records requested in Defendant's Second Supplemental Request for the Production of Documents to Plaintiff, i.e. Plaintiff's bank account and credit card records from October 12 and October 13, 2011.

Plaintiff returned to his hotel room on October 12, 2011 between 9:00 p.m. and 10:00 p.m. and that he was in bed by 10:00 p.m.

(Abeysekera Decl. Ex. A at 7).

### SUPPLEMENTAL DOCUMENT REQUEST NO. 2

Copies of Plaintiff's cellular phone records from October 12-13, 2011, including records of all calls, messages and data usage.

(Abeysekera Decl. Ex. O at 4).

### SECOND SUPPLEMENTAL DOCUMENT REQUEST NO. 1

Documents relating to Plaintiff's bank account(s) activity on October 12, 2011 and October 13, 2011, including but not limited to bank statements from any and all of Plaintiff's bank accounts as of the aforementioned dates evidencing whether Plaintiff withdrew money, and if so, the amount, location, and time of such monetary withdrawal(s).

### SECOND SUPPLEMENTAL DOCUMENT REQUEST NO. 2

Documents relating to Plaintiff's credit card use on October 12, 2011 and October 13, 2011, including but not limited to credit card statements from any and all of Plaintiff's credit cards as of the aforementioned dates evidencing whether Plaintiff used his credit card(s), and if so, the amount, location, and time of such charge(s).

(Abeysekera Decl. Ex. R at 4).

Defendant's interrogatories relevant to Plaintiff's cellular telephone, bank account, and credit card records are as follows:

### INTERROGATORY NO. 16

If Plaintiff had a cellular telephone at any time from January 2009 to date, please state the number(s) for any such cellular telephone, the dates any such number(s) was in effect, and identify the cellular telephone service provider for any such cellular telephone.

(Abeysekera Decl. Ex. B at 8).

### SUPPLEMENTAL INTERROGATORY NO. 1

Identify Plaintiff's cellular telephone provider(s) on October 12-13, 2011.

**SUPPLEMENTAL INTERROGATORY NO. 2**

Identify Plaintiff's cellular telephone number(s) on October 12-13, 2011.

(Abeysekera Decl. Ex. P at 5).

     **C.**     **Defendant's Requests Relevant to Plaintiff's Medical Records.**

In Defendant's First Discovery Requests, Defendant sought information from Plaintiff regarding the nature and extent of his disability, as well as his damages including those for emotional distress (Document Request Nos. 24, 27, and 28).  (See Abeysekera Decl. Exs. A, B).  Later, in response to Plaintiff's deposition testimony that he received treatment from a primary care provider, Dr. Gulati, and that he discussed his alleged emotional distress resulting from his termination with Dr. Gulati, Defendant served its Supplemental Requests for the Production of Documents to Plaintiff, requesting documents related to Dr. Gulati's treatment of Plaintiff (Supplemental Document Request No. 1).  (Abeysekera Decl. Ex. O).  To date, Plaintiff has not produced any records from Dr. Gulati.

Defendant's document requests relevant to Plaintiff's disability and/or emotional distress damages are as follows:

**DOCUMENT REQUEST NO. 24**

Any and all documents concerning any damages Plaintiff intends to seek at the trial of this action.

**DOCUMENT REQUEST NO. 27**

Any and all records or other documents maintained by any physician, health care facility, hospital, psychologist, psychiatrist, social worker, or other healthcare provider or facility with whom Plaintiff visited, consulted, or received treatment or evaluation for any condition or symptom that Plaintiff claims was caused by, resulted from, or exacerbated by any conduct of Defendant, including, but not limited to, medical records, laboratory and test results, consultation notes, treatment notes, and statements of charges for services rendered.

## DOCUMENT REQUEST NO. 28

Any and all records or other documents not otherwise covered above maintained by any physician, health care facility, hospital, psychologist, psychiatrist, social worker, or other healthcare provider or facility with whom Plaintiff visited, consulted or received any treatment or evaluation from at any time since January 1, 2008 other than those covered by Request 27, including but not limited to, medical records, laboratory and test results, consultation notes, treatment notes, and statements of charges for services rendered.

(Abeysekera Decl. Ex. A at 6).

## SUPPLEMENTAL DOCUMENT REQUEST NO. 1

Any and all records or other documents regarding Plaintiff maintained by Plaintiff's identified primary care provider, Dr. Sukhvinder J. Gulati, from any time since January 1, 2008 to the present, including but not limited to, medical records, laboratory and test results, consultation notes, treatment notes, psychotherapy notes, and statements of charges for services rendered. In the alternative, if Plaintiff is not in possession of documents responsive to this request, execute the attached authorization.

(Abeysekera Decl. Ex. O at 4).

### D.   **Defendant's Efforts to Obtain the Requested Information Without Court Action.**

Throughout the discovery process, Defendant, through its counsel, has endeavored to confer with Plaintiff's counsel regarding Plaintiff's deficient discovery responses.

Specifically, by letter dated September 13, 2013, Defendant's counsel formally noticed Plaintiff's counsel of the numerous deficiencies in Plaintiff's responses to Defendant's April 17, 2013 First Request for the Production of Documents and First Set of Interrogatories ("Defendant's Requests") and requested that Plaintiff remedy these failures. (Abeysekera Decl. ¶ 5). By e-mails dated October 8 and October 14, 2013, defense counsel advised Plaintiff's counsel that no response to the September 13, 2013 deficiency letter had been received. (Abeysekera Decl. ¶ 6). On October 15, 2013, counsel spoke by telephone. (Abeysekera Decl. ¶ 7). During that conversation, memorialized thereafter by e-mail from Defendant's counsel to

Plaintiff's counsel, Defendant's counsel once again requested that Plaintiff remedy immediately Plaintiff's deficient responses to Defendant's April 2013 First Discovery Requests. (Abeysekera Decl. ¶ 7). By letter dated October 23, 2013, Plaintiff's counsel stated that Plaintiff's tax returns would be produced, and claimed that Plaintiff's production of a medical records authorization relating to Jamaica Hospital Medical Center, where Plaintiff received emergency treatment on October 13, 2011, sufficed in response to Defendant's requests for records from his primary care physician. (Abeysekera Decl. ¶ 8; Abeysekera Decl. Ex. I). In that same letter, Plaintiff's counsel continued to object to the production of Plaintiff's cellular telephone number(s) and provider(s), and did not address many of Plaintiff's deficient responses. (Abeysekera Decl. ¶ 8; Abeysekera Decl. Ex. I). As such, in response to Plaintiff's counsel's October 23, 2013 letter, by e-mails dated October 23, 2013 and October 25, 2013, defense counsel informed Plaintiff's counsel that his response to the discovery deficiencies raised was inadequate. (Abeysekera Decl. ¶ 9). In particular, defense counsel noted that, because Plaintiff's status as a person with a disability is at issue in the case, records from his primary care physician detailing the nature and extent of his disability are patently relevant. (Abeysekera Decl. ¶ 9). Accordingly, on November 8, 2013, Defendant's counsel advised Plaintiff's counsel that, in light of Plaintiff's failure to supplement his discovery responses despite numerous requests to do so, Defendant would hold open Plaintiff's November 12, 2013 deposition pending Defendant's receipt of relevant requested documents and information. (Abeysekera Decl. ¶ 10). On November 11, 2013, Plaintiff supplemented his responses to Defendant's document demands ("Plaintiff's Supplemental Document Production"). (Abeysekera Decl. ¶ 11). Plaintiff's Supplemental Document Production, however, did not remedy Plaintiff's deficiencies as to any of the documents or information sought to be produced in connection with the instant Motion and,

instead, simply produced copies of his medical expenses and two pay stubs allegedly obtained during Plaintiff's employment with Red Lobster. (Abeysekera Decl. ¶ 11).

On November 12, 2013, Plaintiff was deposed and, *inter alia*, testified as to his whereabouts and activities the night before he was tested for alcohol use, as well as his discussions with Dr. Gulati regarding his emotional distress. (Abeysekera Decl. ¶ 11; Abeysekera Decl. Ex. N at 230-32). On November 13, 2013, immediately following Plaintiff's deposition, Defendant served Plaintiff with Defendant's Supplemental Request for the Production of Documents and Supplemental Set of Interrogatories ("Defendant's Supplemental Requests"), which, *inter alia*, requested that Plaintiff produce documents relevant to his deposition testimony – namely, copies of Plaintiff's cellular telephone records from the discrete time frame of October 12 and 13, 2011[3], as well as documents regarding Plaintiff maintained by Dr. Gulati (or, in the alternative, that Plaintiff execute a medical records authorization specific to Dr. Gulati). (Abeysekera Decl. ¶ 13; Abeysekera Decl. Exs. O, P). Having received no timely response to Defendant's Supplemental Requests, by letter dated December 20, 2013, defense counsel advised Plaintiff's counsel of Plaintiff's failure to respond to the Supplemental Requests and requested immediate response. (Abeysekera Decl. ¶ 14). On January 6, 2014, Defendant served Plaintiff with Defendant's Second Supplemental Request for the Production of Documents ("Defendant's Second Supplemental Requests"), which requested copies of Plaintiff's bank account(s) activity and credit card(s) use on October 12 and 13, 2011.[4] (Abeysekera Decl. ¶ 15; Abeysekera Decl. Ex. R). By letter dated January 8, 2014, in response

---

[3] In an effort to increase the likelihood of production of relevant information, in its Supplemental Requests, Defendant narrowed the timeframe from previous requests regarding Plaintiff's cellular telephone information.

[4] Again, in an effort to increase the likelihood of production of relevant information, in its Second Supplemental Requests, Defendant narrowed the scope of information requested from its previous requests regarding documents relevant to Plaintiff's activities of October 12 and October 13, 2011.

to Defendant's Supplemental Requests, Plaintiff once again objected to discovery of Plaintiff's cellular telephone information and stated that Plaintiff would produce documents relevant to Plaintiff's treatment by Dr. Gulati, although no such production has been made to date. (Abeysekera Decl. ¶ 16; Abeysekera Decl. Ex. S).

Finally, by e-mail dated January 10, 2014, Defendant's counsel again advised Plaintiff's counsel of the numerous discovery items to which Plaintiff has failed to respond and requested a conference in advance of motion practice.   (Abeysekera Decl. ¶ 17).   Having received no response, by e-mail dated January 13, 2014, defense counsel once again wrote to Plaintiff's counsel regarding Plaintiff's discovery deficiencies and repeated the request to confer. (Abeysekera Decl. ¶ 18).   To date, Plaintiff's counsel has failed to respond to these communications and/or remedy the discovery deficiencies detailed above. (Abeysekera Decl. ¶ 19).[5]

## ARGUMENT

**I.      DEFENDANT IS ENTITLED TO THE DISCOVERY REQUESTED AND THE COURT SHOULD COMPEL PLAINTIFF TO PRODUCE SUCH DISCOVERY**

### A.      Plaintiff Should Be Compelled To Produce His Income Tax Returns and Documents Sufficient to Show Plaintiff's Income for 2013.

Under Fed. R. Civ. P. 26(b), parties may generally obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . ."   Because Plaintiff makes a claim for back pay in this case, and has an

---

[5] Although the time for Plaintiff to respond to Defendant's Second Supplemental Requests has not yet run, because these requests are simply a narrowing of Document Requests Nos. 31 and 32 of Defendant's April 2013 Requests and because Defendant anticipates Plaintiff will (as it did in response to Defendant's April 2013 Requests) object and refuse to produce responsive documents, Defendant respectfully requests the Court Order the production of Plaintiff's bank account and credit card records from October 12 and October 13, 2011.

obligation to endeavor to mitigate his alleged damages, Defendant is entitled to Plaintiff's income tax returns for the years 2011 to the present and to documents sufficient to show Plaintiff's income for 2013.[6]

Federal income tax returns are discoverable where the returns are relevant to the claims of the parties, and the information is not readily available in another form.  See Buntzman v. Springfield Redev. Auth., 146 F.R.D. 30, 32 (D. Mass. 1993) (ordering production of federal income tax returns where plaintiff claimed lost income and failed to show that same information was readily available in another form); Halperin v. Berlandi, 114 F.R.D. 8 (D. Mass. 1986) ("[t]ax returns are subject to discovery as long as they are relevant to the subject matter of the litigation").  "[W]here a party has put in issue the amount of [his] income, that party's tax returns or reasonable substitutes are discoverable."  Buntzman, 146 F.R.D. at 32 (citing Pogharian v. Croce, C.A. 81–1307–F (D. Mass. July 29, 1985)).

Plaintiff's tax returns are directly relevant to Plaintiff's alleged damages and the mitigation thereof.  As the Complaint alleges Plaintiff is entitled to back pay and benefits and front pay, Plaintiff has placed his income since the cessation of Plaintiff's employment with JetBlue directly at issue.  As such, the Court should compel Plaintiff to produce his tax returns from 2011 to the present and, to the extent that Plaintiff's 2013 tax returns are not yet discoverable, documents sufficient to show Plaintiff's income for 2013.

Furthermore, despite Plaintiff's initial objections to the production of Plaintiff's income tax returns on the grounds of, inter alia, confidentiality, overbreadth, and relevance (see Abeysekera Decl. Ex. C at 3-4, 6, 7, 11) – none of which are availing given the narrow scope and

---

[6] According an Internal Revenue Service publication of January 8, 2014, employers must provide employees with Copies B, C and 2 of their 2013 Form W-2 by January 31, 2014.  See http://www.irs.gov/taxtopics/tc752.html (January 15, 2014).  Defendant requests the Court compel Plaintiff to produce this most recent income tax record when available or, in the alternative, to produce information sufficient to show Plaintiff's income for 2013.

patent permissibility of Defendant's request – in his October 23, 2013 letter, Plaintiff's counsel stated numerous times that Plaintiff *will* produce his 2011 and 2012 tax returns.   (See Abeysekera Decl. Ex. I at 1 ("Plaintiff will produce his income by way of his tax returns for 2012 and 2011, if he can locate the return, and his most recent paystub from 2013")).   However, despite these assurances, Plaintiff has not produced *any* of his income tax returns to Defendant. Rather, on November 11, 2013, Plaintiff produced two single Red Lobster paystubs.   These paystubs are an insufficient response to Defendant's discovery requests and do not provide Defendant with the information necessary to defend against the allegations in this action or to evaluate its potential damages (particularly because the paystubs contain Plaintiff's hourly wages as well as his tips, which vary from week to week, and thus Defendant cannot extrapolate his yearly salary from such documents).

For these reasons, Defendant requests the Court compel Plaintiff to produce Plaintiff's federal income tax returns to documents sufficient to show Plaintiff's income for 2013.

**B.    Plaintiff Should Be Compelled To Provide Plaintiff's Cellular Telephone Records and Information and Plaintiff's Bank Account and Credit Card Records on October 12, 2011 and October 13, 2011.**

Under the aforementioned Fed. R. Civ. P. Rule 26 relevance standard, Defendant is entitled to information regarding Plaintiff's cellular telephone use, Plaintiff's bank account activity and Plaintiff's credit card use on October 12, 2011 and October 13, 2011.   As previously stated, Plaintiff has squarely placed his whereabouts and activities on October 12, 2011 and October 13, 2011 at issue.   As such, and to the extent that any of the requested records supports or contradicts Plaintiff's version of events on these dates and thus reflect on Plaintiff's credibility, that information is necessary to Defendant's defense of the instant action.

In response to Defendant's requests for information regarding Plaintiff's actions and whereabouts on October 12 and October 13, 2011 (Defendant's First Request for the Production of Documents Request Nos. 31 and 32), Plaintiff objected to the requests as "irrelevant," "not likely to lead to the discovery of admissible evidence," "overly broad," "vague," and "intended to harass, burden and embarrass Plaintiff." (See Abeysekera Decl. Ex. C at 14-15). In response to Defendant's requests for Plaintiff's cellular telephone number(s) and provider(s) (Defendant's First Set of Interrogatories No. 16) and cellular telephone records from October 12 and October 13, 2011 (Defendant's Supplemental Request For the Production of Documents Request No. 2), Plaintiff objected to the requests as "irrelevant," "intended to harass and burden Plaintiff," "overly broad," and "vague," as well as on the basis that the information "is confidential in nature." (See Abeysekera Decl. Ex. D at 11; Abeysekera Decl. Ex. S at 2). Such objections are baseless.

As to Plaintiff's objections on the basis of relevance and whether the information is likely to lead to the discovery of admissible evidence, as previously stated, information which could verify or contradict Plaintiff's Complaint allegations and deposition testimony regarding his whereabouts and activities on October 12 and October 13, 2011 (and consequently whether Plaintiff was in his hotel room asleep as he claims or elsewhere consuming alcohol in violation of JetBlue's policy regarding alcohol consumption prior to a scheduled flight) is highly relevant and likely to lead to the discovery of admissible evidence. "Inquiries concerning a witnesses' credibility are relevant and thus reasonably calculated to lead to the discovery of admissible evidence, even if the information sought is not directly related to the subject of the underlying litigation." Cabana v. Forcier, 200 F.R.D. 9, 17 (D. Mass. 2001) (internal citations omitted).

Here, the information sought is not only relevant to Plaintiff's credibility but also directly related to the subject of the underlying litigation.

As to Plaintiff's remaining objections, Defendant does not seek this information to harass, burden or embarrass Plaintiff, but to discover highly probative information which is easily ascertainable by Plaintiff through contact with his cellular telephone provider and bank and credit institutions. Furthermore, the requests are not overly broad or vague, but, rather, pertain to a mere *two days'* worth of information. Finally, in counsels' discussions regarding the appropriateness of Plaintiff's objections to these requests, Plaintiff's counsel has never articulated which principal or privilege renders Plaintiff's cellular phone records, from only two days in October 2011, "confidential" despite Plaintiff's position that those very records could support his version of events. For all of these reasons, Plaintiff's objections to the very limited discovery of documents regarding his cellular telephone use, bank account activity, and credit card use on October 12, 2011 and October 13, 2011 are baseless.

Furthermore, to the extent that Plaintiff asserts he is not in possession, custody, or control of such information (see Abeysekera Decl. Ex. C at 14-15), these claims are meritless. To the extent that Plaintiff is no longer in actual possession or custody of the documents (although Defendant would argue that Plaintiff certainly was in possession of these relevant records at some time and was under an obligation since at least the November 8, 2011 filing of Plaintiff's charge of discrimination with the FCHR and EEOC to maintain these records), Plaintiff is in control of them. "Under Rule 34 'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability, to obtain the documents from a non-party to the action." <u>Calzaturficio S.C.A.R.P.A.s.p.a.</u>

v. Fabiano Show Co., Inc., 201 F.R.D. 33, 39 (D. Mass. 2001) (citing Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633 (D. Minn. 2000)).   Thus, as Plaintiff has the legal right and practical ability to request copies of records of his cellular phone usage, bank account activity and credit card use for two discrete days in 2011 from his cellular telephone provider, bank and credit institutions, Plaintiff has the obligation to obtain and produce such information.

        For these reasons, Defendant respectfully requests that this Court issue an order compelling Plaintiff to produce information regarding Plaintiff's cellular telephone use, Plaintiff's bank account activity and Plaintiff's credit card use on October 12, 2011 and October 13, 2011.

### C.   Plaintiff Should Be Compelled To Produce Documents Regarding His Disability and Claim For Emotional Distress Damages.

        Defendant is entitled to documents maintained by the primary care provider Plaintiff identified in his November 12, 2013 deposition, Dr. Sukhvinder K. Gulati.   (See Abeysekera Decl. Ex. N at 182).   Where, as here, a Plaintiff places the extent and nature of his disability, as well as his level of emotional distress, directly at issue, a Defendant is entitled to discoverable information regarding those claims.

        Specifically, Plaintiff claims that, *inter alia*, JetBlue discriminated against him because at some point during the alcohol testing process (prior to the initial Breathalyzer test, according to Plaintiff), he experienced an epileptic seizure which rendered him incapable of continuing the testing process, and that as a result, JetBlue should have cancelled the test or otherwise accommodated his disability despite its reasonable suspicion that Plaintiff had consumed alcohol in violation of its own policies as well as FAA/DOT regulations. (Complaint ¶¶ 44-48, 60-61, 71, 74).   As such, the nature of Plaintiff's disability is squarely at issue here – for example, his history of seizures, how long his seizures can last, how severe they are, etc.   In

addition, Plaintiff has placed his medical records at issue by alleging emotional distress damages, and testifying that he spoke with his primary care physician, Dr. Gulati, about his emotional distress.  (See Abeysekera Decl. Ex. N at 230-31).  For these reasons, the Court should compel Plaintiff to produce his medical records as maintained by Dr. Gulati from any time since January 1, 2008 to the present, or execute an authorization for the release of such medical information.

Furthermore, despite Plaintiff's initial objections to the production of his medical records on the grounds of "privacy" and "confidentiality," his responses also state that he "will contact his medical provider(s) and produce any such documents that are relevant to the above-captioned action."  (See Abeysekera Decl. Ex. C at 12).  Moreover, in response to Plaintiff's Supplemental Requests for the Production of Documents Request No. 1 (for records regarding Plaintiff maintained by Dr. Gulati), Plaintiff stated that "he has requested the responsive documents to this request from his primary care provider, Dr. Sukhvinder Gulati, and is waiting to receive the documents.  Plaintiff also states that he may have to complete and execute a medical release form in order for his primary care provider to release his records."  (See Abeysekera Decl. Ex. S at 2).  However, Plaintiff's response ignores the fact that Defendant *already* sent Plaintiff a medical records authorization.  Moreover, despite his representations, Plaintiff has not produced *any* such records to date.

## II. PLAINTIFF SHOULD BE COMPELLED TO PAY DEFENDANT'S REASONABLE EXPENSES AND ATTORNEYS' FEES IN CONNECTION WITH THE INSTANT MOTION

Fed. R. Civ. P. 37(a)(5)(A) authorizes this Court to require a party whose conduct necessitated preparation of a motion to compel or the advising attorney or both to pay the reasonable expenses incurred in obtaining the order, including attorneys' fees, to the moving party.  Plaintiff's failure to provide sufficient document responses and disclosures to clearly

relevant and narrowly-tailored discovery requests has required Defendant to incur significant and unnecessary legal fees to move to compel production of documents.  Because Plaintiff's failure to produce responsive documents is wholly without basis in fact or law, this Court should order Plaintiff to pay Defendant's reasonable expenses and attorneys' fees incurred in preparing this motion.

## CONCLUSION

For all of the foregoing reasons, the Court should enter an order directing Plaintiff to fully respond to discovery as set forth above; and to pay Defendants' reasonable costs and attorneys' fees incurred in bringing this motion.

Respectfully submitted,

s/ Erik Winton
Erik Winton, BBO #600743
WintonE@jacksonlewis.com
JACKSON LEWIS LLP
75 Park Plaza, 4th floor
Boston, MA  02116
TELE: (617) 367-0025
Dated:  January 17, 2014          FAX: (617) 367-2155

-and-

s/ Samantha Abeysekera
*Admitted Pro Hac Vice*
Samantha.Abeysekera@akerman.com
AKERMAN LLP
666 Fifth Avenue, 19th Floor
New York, New York 10103
TELE: (212) 880-3829

ATTORNEYS FOR DEFENDANT JETBLUE AIRWAYS CORPORATION