UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERTO RODRIGUEZ,

        Plaintiff,

v.

JETBLUE AIRWAYS CORPORATION,

        Defendant.

Civil Action No. 1:12-cv-11531-RGS

REQUEST FOR ORAL ARGUMENT

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JETBLUE AIRWAYS CORPORATION'S MOTION FOR SUMMARY JUDGMENT TO DISMISS PLAINTIFF ROBERTO RODRIGUEZ'S COMPLAINT IN ITS ENTIRETY

Samantha Abeysekera
*Admitted Pro Hac Vice*
*Samantha.Abeysekera@akerman.com*
AKERMAN LLP
666 Fifth Avenue, 19th Floor
New York, New York 10103
TELE: (212) 880-3829
FAX: (212) 905-6481

    -and-

Erik Winton, BBO #600743
*WintonE@jacksonlewis.com*
JACKSON LEWIS LLP
75 Park Plaza, 4th floor
Boston, Massachusetts 02116
TELE: (617) 367-0025
FAX: (617) 367-2155

ATTORNEYS FOR DEFENDANT
JETBLUE AIRWAYS CORPORATION

Dated: June 18, 2014
   New York, New York

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE........................................ 3

ARGUMENT ............................................................................................................... 3

  A.  THE STANDARD FOR SUMMARY JUDGMENT. ......................................... 3

  B.  PLAINTIFF FAILS TO STATE A CLAIM FOR DISABILITY
     DISCRIMINATION UNDER FEDERAL OR STATE LAW. .......................... 4

    **1.**  Legal Standard. ............................................................................................ 4

    **2.**  Plaintiff Cannot Establish His *Prima Facie* Case For Disability Discrimination. ......... 5

      a.  Plaintiff Was Not Qualified to Perform the Essential Functions of the
        Flight Attendant Position. ........................................................................... 5

        i.  Plaintiff Testified That He Could Not Comply with FAA and DOT
          Regulations Regarding Alcohol Testing for Flight Attendants. ................ 5

        ii.  Plaintiff Testified That His Epilepsy is Unpredictable and Incapacitating
          and That It Is Not Safe for Him to "Be on a Plane" During a Seizure, Rendering
          Him Unqualified for the Safety-Sensitive Flight Attendant Position. ...................... 8

      b.  Plaintiff Cannot Establish That He Was Discharged Because of His Disability........ 11

        i.  Plaintiff's Demonstrably Specious Allegations. .................................................... 11

        ii.  Legal Standard. ................................................................................................... 12

        iii.  All of the Documentary Evidence in This Case Establishes That
           Plaintiff Was Terminated for Failing His Initial Test and Refusing a
           Confirmation Test, and Not Because of His Epilepsy. ........................................... 13

        iv.  JetBlue's Treatment of Plaintiff's Refusal of the Confirmation Test
           as a Failure Was Not Discriminatory but Required by the FAA/DOT,
           Which Also Prohibited Cancellation of the Test. .................................................. 16

        v.  In Fact, Discovery in This Case Revealed That Plaintiff Reported to
          Work While Drunk, Further Supporting JetBlue's Non-Discriminatory
          Reasons for His Termination. ................................................................................ 20

  C.  PLAINTIFF CANNOT ESTABLISH THAT JETBLUE'S REASON FOR
     HIS TERMINATION WAS A PRETEXT FOR DISCRIMINATION. .......................... 21

D. PLAINTIFF'S PROPOSED ACCOMMODATIONS OF HIS DISABILITY ARE UNREASONABLE AS A MATTER OF LAW AND/OR WOULD HAVE POSED AN UNDUE HARDSHIP ON JETBLUE. ........................................................ 23

    1. Plaintiff's Proposed Accommodations Are Unreasonable Because They Require JetBlue To Violate Federal Law And Exempt Him From An Essential Function – The Alcohol Test. .................................................................. 23

    2. Assuming Plaintiff's Proposed Accommodations Were Reasonable, They Would Have Posed an Undue Hardship on JetBlue for the Same Reasons............................. 25

E. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FMLA. ............................... 26

    1. Plaintiff's Interference Claims Fail Because He Never Requested Leave, And Even If He Did, He Would Have Been Terminated Regardless. .......................... 26

    2. Plaintiff's FMLA Retaliation Claim Also Fails Because He Cannot Establish His *Prima Facie* Case or That the Real Reason for His Termination Was Pretextual. ......................................................................... 28

F. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF IMPLIED CONTRACT. ................................................................................................................. 29

CONCLUSION ...................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Albertsons, Inc. v. Kirkingburg,
    527 U.S. 555 (1999)...............................................................................................24

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)..................................................................................................3

Andujar v. IPC Int'l Corp.,
    583 F. Supp. 2d 213 (D. Mass. 2008) ...............................................................5, 9

Bay v. Cassens Transportation Co.,
    212 F.3d 969 (7th Cir. 2000) ...........................................................................13, 24

Benoit v. Technical Mfg. Corp.,
    331 F.3d 166 (1st Cir. 2003)....................................................................................4

Biggins v. Hazen Paper Co.,
    953 F.2d 1405 (1st Cir. 1992)................................................................................30

Bosley v. Cargill Meat Solutions Corp.,
    705 F.3d 777 (8th Cir. 2013) .................................................................................27

Cadrin v. New England Tel. & Tel. Co.,
    828 F. Supp. 120 (D. Mass. 1993)........................................................................30

Cailler v. Care Alternatives of Massachusetts, LLC,
    09 Civ. 12040 (DJC), 2012 WL 987320 (D. Mass. Mar. 23, 2012) ......................23

Calero-Cerezo v. U.S. Dep't of Justice,
    355 F.3d 6 (1st Cir. 2004).......................................................................................3

Call v. Fresenius Med. Care Holdings, Inc.,
    534 F. Supp. 2d 184 (D. Mass. 2008) ..............................................................28, 29

Campbell v. Federal Express Corp.,
    918 F. Supp. 912 (D. Md. 1996)...........................................................................16

Carper v. TWC Servs., Inc.,
    820 F. Supp. 2d 1339 (S.D. Fla. 2011) ..................................................................4

Daly v. Abbot Labs., Inc.,
    11 Civ. 12247 (GAO), 2013 WL 5328898 (D. Mass. Sept. 23, 2013) ..................12

D'Amico v. Compass Grp. USA, Inc.,
    198 F. Supp. 2d 18 (D. Mass. 2002), aff'd, 52 F. App'x 524 (1st Cir. 2002) .........29

Dube v. J.P. Morgan Investor Serv.,
   201 Fed. Appx. 786 (1st Cir. 2006) ......................................................................28

E.E.O.C. v. Allendale Nursing Centre,
   996 F. Supp. 712 (W. D. Mich. 1998) ...................................................................24

E.E.O.C. v. Amego,
   110 F.3d 135, 144 (1st Cir. 1997)..........................................................................10

Feliciano de la Cruz v. El Conquistador Resort & Country Club,
   218 F.3d 1 (1st Cir. 2000)..........................................................................................4

Fiumara v. President & Fellows of Harvard Coll.,
   327 F. App'x 212 (1st Cir. 2009)............................................................................23

Freadman v. Metro. Prop. & Cas. Ins. Co.,
   484 F.3d 91 (1st Cir. 2007)...............................................................................12, 13

Furtado v. Standard Parking Corp.,
   820 F. Supp. 2d 261 (D. Mass. 2011) .........................................................21, 27, 28

Greenberg v. BellSouth Telecomms., Inc.,
   498 F.3d 1258 (11th Cir. 2007) .........................................................................4, 23

Grosso v. UPMC,
   857 F. Supp. 2d 517 (W.D. Pa. 2012)................................................................27, 29

Hicks v. Ryan,
   13 Civ. 10709 (RGS), 2014 WL 250338 (D. Mass. Jan. 21, 2014).......................12

Jones v. Nationwide Life Ins. Co.,
   696 F.3d 78 (1st Cir. 2012)..................................................................................5, 9

Jones v. Walgreen Co.,
   679 F.3d 9 (1st Cir. 2012)..........................................................................................5

King v. Mrs. Grissom's Salads, Inc.,
   187 F.3d 636 (6th Cir. 1999) ..............................................................................6, 8

Labonte v. Hutchins & Wheeler,
   678 N.E.2d 853 (Mass. 1997) ................................................................................23

Loeb v. Textron, Inc.,
   600 F.2d 1003 (1st Cir. 1979)................................................................................22

Mason v. Massachusetts Dep't of Envtl. Prot.,
   774 F. Supp. 2d 349 (D. Mass. 2011) ....................................................................27

Matthews v. Ocean Spray Cranberries,
    686 N.E.2d 1303 (Mass. 1997) ...............................................................................4

McArdle v. Town of Dracut/Dracut Pub. Sch.,
    909 F. Supp. 2d 48 (D. Mass. 2012) ..............................................................26, 28

McArdle v. Town of Dracut/Dracut Pub. Sch.,
    732 F.3d 29, 34 (1st Cir. 2013)..............................................................................28

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973).................................................................................................4

Medina-Munoz v. R.J. Reynolds Tobacco Co.,
    896 F.2d 5 (1st Cir. 1990).......................................................................................22

Melanson v. Browning-Ferris Indus.,
    281 F.3d 272 (1st Cir. 2002)....................................................................................4

Melman v. Metro. Gov't of Nashville,
    08 Civ. 01205 (WJH), 2010 WL 3063805 (M.D. Tenn. Aug. 3, 2010) ............16, 24

Mesnick v. General Elec. Co.,
    950 F.2d 816 (1st Cir. 1991)..................................................................................12

Mulloy v. Acushnet Co.,
    03 Civ. 11077 (DPW), 2005 WL 1528208 (D. Mass. June 20, 2005 .....................24

Murphy v. UPS,
    527 U.S. 516 (1999)...............................................................................................16

Phelps v. Optima Health, Inc.,
    251 F.3d 21 (1st Cir. 2001)....................................................................................26

Ragsdale v. Wolverine World Wide, Inc.,
    535 U.S. 81 (2002).................................................................................................28

Reed v. LePage Bakeries, Inc.,
    244 F.3d 254 (1st Cir. 2001)..................................................................................25

Soileau v. Guilford of Maine, Inc.,
    105 F.3d 12 (1st Cir. 1997)....................................................................................12

Tobin v. Liberty Mut. Ins. Co.,
    433 F.3d 100 (1st Cir. 2005)............................................................................21, 22

Ward v. Mass. Health Research Inst.,
    209 F.3d 29 (1st Cir. 2000)......................................................................................5

Wright v. CompUSA, Inc.,
    352 F.3d 472 (1st Cir. 2003) ............................................................12

**STATUTES**

29 U.S.C. § 2612(e)(2)(B) (2004) ..........................................................27

42 U.S.C. § 12112(b)(5)(A) ...................................................................23

Florida Statutes Section 760.10 ("FHRL") ..............................................1

Massachusetts General Laws Chapter 151B ("M.G.L.c 151B") .................1, 4

**OTHER AUTHORITIES**

14 C.F.R. § 120.217(d)(4)(i) ...................................................................18

29 C.F.R. § 825.303(a) ..........................................................................27

29 C.F.R. § 1630.2(n) .............................................................................5

29 C.F.R. § 1630.2(o)(1)(ii) ...................................................................23

29 C.F.R. § 1630.2(p)(1) ........................................................................26

29 C.F.R. § 1630.2(p)(2)(v) ....................................................................26

29 C.F.R. § 1630.15(e) ..........................................................................24

49 C.F.R. § 40.243(c) ............................................................................19

49 C.F.R. § 40.261(b) ............................................................................17

49 C.F.R. § 40.261(c) ........................................................................17, 19

49 C.F.R. § 40.265(5)(c)(1)(iv)(A) ..........................................................19

49 C.F.R. § 40.267 ................................................................................19

49 C.F.R. § 40.271(c) ............................................................................19

49 C.F.R. § 40.23(c) ..............................................................................17

49 C.F.R. § 40.241(b)(2) ........................................................................18

49 C.F.R. § 40.241 ................................................................................18

49 C.F.R. § 40.243(d) ............................................................................18

49 C.F.R. § 40.271(a)(1) ........................................................................19

Fed. R. Civ. P. 56..................................................................................................................1, 3

Local Rule 56.1 ..................................................................................................................3

Pursuant to Fed. R. Civ. P. 56(c) and the Local Rules of this Court, Defendant JetBlue Airways ("JetBlue" or "Defendant") submits this Memorandum of Law in support of its Motion for Summary Judgment ("Motion") as to all remaining counts of Plaintiff's Complaint and Request for Trial By Jury ("Complaint").[1]

## <u>INTRODUCTION</u>

This action arises out of Plaintiff Roberto Rodriguez's ("Plaintiff") employment with JetBlue. Plaintiff, a former Boston-based Inflight Crewmember, or flight attendant, was terminated in connection with JetBlue's legitimate, non-discriminatory understanding that Plaintiff failed a "reasonable suspicion" Breathalyzer test for alcohol use on October 13, 2011, in violation of JetBlue policies as well as Federal Aviation Administration ("FAA") and Department of Transportation ("DOT") regulations.[2] JetBlue's decision to terminate Plaintiff is supported by the following:

- Contemporaneous accounts from two supervisors, both of whom were trained to identify alcohol use, who stated that Plaintiff possessed physical and other symptoms of alcohol use when he and his co-worker, referred to herein as "S.M.," reported for duty over 30 minutes late;

- Contemporaneous emails and other documents from its alcohol tester, who administered an alcohol test to Plaintiff and stated that Plaintiff failed his initial Breathalyzer alcohol test and definitively refused to take a requisite confirmation test;

- The Alcohol Testing Form ("ATF"), a DOT-mandated document which evidenced Plaintiff's failure of his initial Breathalyzer test and his refusal of the confirmation test;

---

[1] Plaintiff's Complaint alleges the following counts: disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), Massachusetts General Laws Chapter 151B ("M.G.L.c 151B"), and Florida Statutes Section 760.10 ("FHRL") (Counts I, II, and III); discrimination and retaliation in violation of the Family and Medical Leave Act (Counts IV and V); and breach of implied contract in connection with JetBlue's policies on Breathalyzer tests, medical leave, and medical treatment (Count VI). (See Dkt. #1.) In October 2012, Defendant moved to dismiss portions of Plaintiff's Complaint for failure to exhaust administrative remedies. (See Dkt. #11-12.) On December 20, 2012, the Court granted in part and denied in part Defendant's Motion to Dismiss, dismissing Plaintiff's retaliation claims in Counts II and III of the Complaint. (See Dkt. #19.)

[2] As an air carrier, JetBlue is regulated by the FAA and the DOT, which promulgate specific procedures related to drug and alcohol testing for flight attendants like Plaintiff. (Statement at ¶ 69.)

- FAA and DOT regulations, both of which *required* JetBlue to treat Plaintiff's refusal of the confirmation alcohol test as a failure of the test; and,

- JetBlue's own "zero tolerance" policy regarding alcohol use, which mandates termination, and not mere removal from duty, where a Crewmember fails a test for alcohol.

Plaintiff's conclusory, unsupported allegations dispute the contemporaneous documentation on which JetBlue based its decision. Plaintiff claims that he was not drunk, and took neither an initial nor confirmation alcohol test, but rather collapsed in an epileptic seizure prior to the testing process and went to the emergency room (incidentally, Plaintiff's emergency room discharge report states that he was diagnosed there with "acute alcohol intoxication"). Plaintiff claims that JetBlue discriminated against him on the basis of his disability (epilepsy) by not cancelling the alcohol test, despite the copious documentation, discussed above, that Plaintiff – a flight attendant responsible for the safety of hundreds of passengers – reported for duty while still drunk. Plaintiff has failed to raise a genuine issue of material fact sufficient to defeat this Motion as a matter of law. As a matter of policy, however, denial of this Motion will open the floodgates for safety-sensitive, Inflight personnel to evade mandatory drug and alcohol testing by claiming that any ailment, whether real or manufactured, prevents air carriers from complying with federal law.

Accordingly, summary judgment is appropriate in this case as to all of Plaintiff's ADA, Family and Medical Leave Act ("FMLA"), and breach of contract claims. Specifically, Plaintiff's ADA claims fail because: (1) as an epileptic flight attendant who testified that he is prone to unpredictable and dangerous seizures, Plaintiff testified that he was unable to submit to government-regulated testing or perform the essential functions of a flight attendant; (2) there is no evidence, apart from Plaintiff's conclusory allegations, that Plaintiff was terminated "because of" his disability or that JetBlue's reason for Plaintiff's termination – his failure of a test for

alcohol use – was a pretext for disability discrimination; and (3) Plaintiff's proposed accommodations of his disability – essentially, that he simply should have been allowed to forego the test – would have circumvented FAA/DOT-mandated procedures and are thus unreasonable as a matter of law and would have imposed an undue hardship on JetBlue. Moreover, Plaintiff's FMLA claims fail because: (1) Plaintiff never requested leave or otherwise adequately placed JetBlue on notice of a request for FMLA leave; and (2) Plaintiff's termination was based on the legitimate, non-discriminatory, and non-retaliatory reason cited above. Finally, Plaintiff's breach of contract claim fails because JetBlue's personnel manuals did not constitute a binding contract between Plaintiff and JetBlue. For these reasons, as set forth in detail below, the Court should grant summary judgment in this case and dismiss all of Plaintiff's claims with prejudice.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, the uncontested material facts relevant to this motion are set forth in separately-numbered paragraphs in the accompanying Local Rule 56.1 Statement on behalf of Defendant ("Statement").

## ARGUMENT

### A. THE STANDARD FOR SUMMARY JUDGMENT.

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986)). The mere existence of some alleged factual dispute will not defeat a properly supported summary judgment motion. Anderson, 477 U.S. at

247-52. Nor may a party resisting summary judgment rely on conjectural or unsupported statements of belief. Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000). Rather, the plaintiff must "affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Melanson v. Browning-Ferris Indus., 281 F.3d 272, 276 (1st Cir. 2002). Summary judgment is often appropriate in employment cases where, as here, the party opposing judgment "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Feliciano de la Cruz, 218 F.3d at 5 (citation omitted); Matthews v. Ocean Spray Cranberries, 686 N.E.2d 1303, 1308 (Mass. 1997) (finding summary judgment appropriate under state law where plaintiff is "unable to offer admissible evidence of the defendant's discriminatory intent, motive, or state of mind sufficient to carry the plaintiff's burdens and support a judgment in the plaintiff's favor.").

## B. PLAINTIFF FAILS TO STATE A CLAIM FOR DISABILITY DISCRIMINATION UNDER FEDERAL OR STATE LAW.

### 1. Legal Standard.

In determining liability under the ADA, M.G.L.c. 151B, and FHRL, courts have adopted the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3] Under the McDonnell Douglas framework, plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. See McDonnell Douglas, 411 U.S. at 802. To state a *prima facie* claim for disability discrimination, a plaintiff must prove, by a preponderance of the evidence, that: 1) he was disabled within the meaning of the law; 2) he was a qualified

---

[3] See Greenberg v. BellSouth Telecomms., Inc., 498 F.3d 1258, 1263-64 (11th Cir. 2007) (noting that Florida courts apply the McDonnell Douglas framework when evaluating disability discrimination claims under the FHRL); Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003) (noting that Massachusetts courts apply the McDonnell Douglas framework when evaluating discrimination claims under Chapter 151B). The analysis for a claim for disability discrimination under M.G.L.c. 151B and the FHRL is the same as under the ADA. See, e.g., Greenberg, 498 F.3d at 1263-64; Benoit, 331 F.3d at 173; Carper v. TWC Servs., Inc., 820 F. Supp. 2d 1339, 1346 (S.D. Fla. 2011) ("Because the FCRA is nearly identical to [ADA], federal law interpreting the ADA is applicable to claims arising under the FCRA and vice versa.") (citing Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255 (11th Cir. 2007)).

individual, meaning he was able to perform the essential functions of the position with or without a reasonable accommodation; and 3) he was discharged because of his disability. See Ward v. Mass. Health Research Inst., 209 F.3d 29, 33 (1st Cir. 2000); Andujar v. IPC Int'l Corp., 583 F. Supp. 2d 213, 216 (D. Mass. 2008). If plaintiff makes this preliminary showing, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for its actions. See id. Once defendant meets its burden, the presumption of discrimination disappears and the burden shifts back to plaintiff to prove, by a preponderance of the evidence, that defendant's proffered reason for its actions was not the real reason, but was a pretext for discrimination. See id. Here, Plaintiff can establish neither the second and third prongs of his *prima facie* burden, nor the pretextual nature of JetBlue's legitimate, non-discriminatory reason for his termination.

**2. Plaintiff Cannot Establish His *Prima Facie* Case For Disability Discrimination.**

 **a. Plaintiff Was Not Qualified to Perform the Essential Functions of the Flight Attendant Position.**

  i. Plaintiff Testified That He Could Not Comply with FAA and DOT Regulations Regarding Alcohol Testing for Flight Attendants.

   A "qualified individual" is an employee who, with or without reasonable accommodation, is able to perform the essential functions of his position. Andujar, 583 F. Supp. 2d at 217 (citing Ward, 209 F.3d at 33). "Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires" and "does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n). In determining the essential functions, factors to be considered include the employer's judgment, written job descriptions, the work experience of past incumbents of the job, and the current work experience of incumbents in similar jobs. Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 88 (1st Cir. 2012) (citing 29 C.F.R. § 1630.2(n)(3)). The court gives a "significant degree" of deference to an employer's business judgment about the necessities of a job. See Jones v. Walgreen Co., 679 F.3d 9, 14 (1st Cir.

2012) (routine physical tasks like standing and walking were essential functions of store manager position where court relied heavily on employer's own description of job).

Where employers are required by government regulations to hold their employees to certain safety standards, courts have held that compliance with those regulations is an essential function of the employees' positions. See, e.g., King v. Mrs. Grissom's Salads, Inc., 187 F.3d 636 (6th Cir. July 22, 1999). For example, in King, the plaintiff, a commercial driver, was unable to obtain a DOT-mandated license due to his medication for Attention Deficit Disorder and argued that the company physician's "blanket exclusion" of those on the medication, when his own physician deemed him able to be licensed, was discriminatory. See id. at *2-3. The employer maintained that plaintiff's termination was lawful pursuant to DOT regulations. See id. The Sixth Circuit agreed and held that because of the plaintiff's failure to comply with DOT-mandated procedures, which were "essential function[s] of the job for a commercial driver," the plaintiff was not qualified for the position. See id. Likewise, in Kinnary v. City of New York, the Second Circuit held that an essential function of a plaintiff's job as a sludge boat captain "was, by definition, acting as a captain, which he could only do if he held the proper license." See Kinnary, 601 F.3d 151, 156-57 (2d Cir. 2010). As such, the Court noted that in order to be qualified for the position, the plaintiff must have been able to maintain his license, regardless of any requested accommodation for his disability. See id. Accordingly, a plaintiff's claimed inability to comply with government-required procedures renders him unqualified for a government-regulated position.

In this case, Plaintiff claims that his epilepsy rendered him unable to comply with FAA/DOT-mandated procedures governing "reasonable suspicion" tests for alcohol use, which, generally, require an Inflight Crewmember to submit to an alcohol test where he or she is found

to exhibit the signs and symptoms of alcohol use,[4] which Plaintiff did in fact exhibit here. (Statement at ¶ 70.)  It is undisputed that Plaintiff and his co-worker, S.M., arrived significantly late for their scheduled flight.  (Statement at ¶ 47.)  When they boarded, they interacted with Awilda Ayala ("Ayala") and David Rodriguez, Inflight supervisors who were Antidrug and Alcohol Reasonable Suspicion Training ("ADARSAT")-trained, which means Ayala and David Rodriguez were certified to detect the signs and symptoms of alcohol use and identify Crewmembers for alcohol testing based on reasonable suspicion.[5]  (Statement at ¶¶ 49, 50, 52-57.)  David Rodriguez noticed that Plaintiff smelled like alcohol, was acting nervous, and that his eyes were red and glassy, while Ayala noticed that Plaintiff's eyes were bloodshot.  (Statement at ¶¶ 53-54.)  Accordingly, David Rodriguez and Ayala selected Plaintiff and S.M. for reasonable suspicion alcohol testing, which, according to FAA/DOT procedures, required Plaintiff and S.M. to submit to two Breathalyzer tests – an initial test and a confirmation test.  (Statement at ¶ 62.)  S.M. took both the initial and confirmation tests, and tested positive for unlawful alcohol use both times (i.e., failed the tests).  (Statement at ¶¶ 101, 107.)  As for Plaintiff, although JetBlue's records indicate that Plaintiff took the initial test and failed it, and then refused to take a confirmation test (which JetBlue was required to treat as a failure), Plaintiff claims that he did not take an initial test and never refused a confirmation test.  (Statement at ¶¶ 117, 120, 121-23, 137, 141.)  Rather, Plaintiff claims he experienced an epileptic seizure which rendered him unable to participate in the testing process altogether.  (Statement at ¶¶ 121-22.)  Plaintiff claims that his alleged inability to take the FAA/DOT-mandated tests should, somehow, not have

---

[4] Pursuant to FAA regulations 14 C.F.R. § 120.1 ("Applicability") and 14 C.F.R. § 120.5 ("Procedures"), air carriers covered by 14 C.F.R. Part 120 must implement a drug and alcohol testing program applicable to employees who perform safety-sensitive functions in aviation which complies with the procedures set forth in DOT regulations 49 C.F.R. Part 40, "Procedures for Transportation Workplace Drug and Alcohol Testing Programs."  (Statement at ¶ 86.)

[5] As Ayala testified, ADARSAT-certified Crewmembers receive annual training consisting of education regarding drugs and alcohol and the signs of drug and alcohol use.  (Statement at ¶¶ 49-50.)

resulted in his termination, despite the fact that: (1) FAA/DOT regulations do not permit a test to be cancelled, postponed, or otherwise forgone under the circumstances present here (see Point B.2.b.iv. *infra*); and (2) JetBlue's zero tolerance policy on alcohol use mandated his termination (see Point B.2.b.iii *infra*). (Statement at ¶¶ 16, 20-21, 72-74.) In other words, like the plaintiffs in King and Kinnary, Plaintiff claims that his disability should have excused him from the government regulations to which JetBlue is subject, and that JetBlue's failure to cancel, postpone, or otherwise exempt him from those regulations altogether was discriminatory. Plaintiff's position is meritless because his claimed inability to complete the government-mandated testing process, an essential function of the flight attendant position, makes him unqualified to hold that position.

ii. Plaintiff Testified That His Epilepsy is Unpredictable and Incapacitating and That It Is Not Safe for Him to "Be on a Plane" During a Seizure, Rendering Him Unqualified for the Safety-Sensitive Flight Attendant Position.[6]

Plaintiff testified that he has experienced 20-25 seizures during his lifetime (Plaintiff is only 32 years old), he can experience a seizure when he deviates even slightly from his medication schedule, he can experience a seizure even when he takes his medication on time, and, when he experiences a seizure, it is "not safe" for him "to be on a plane." (Statement at ¶¶ 7, 9, 13-15.) Plaintiff's testimony critically undermines his ADA claims.

Courts have held that, in certain contexts, individuals who experience periods of unconsciousness associated with conditions like epilepsy are not "qualified individuals" under the ADA. For example, in Olsen v. Capital Region Med. Ctr., the Eighth Circuit held that a mammography technician with epilepsy was not a "qualified individual" with a disability under

---

[6] JetBlue does not posit herein that all epileptics are *per se* unqualified for the flight attendant position. Rather, the argument that Plaintiff is unqualified is very specific to his own testimony, which establishes that his epilepsy is uncontrolled despite medication which he has been taking for years. (Statement at ¶¶ 13-14.) Certainly, those with epilepsy who can and do perform all of the essential functions of the flight attendant position – including FAA/DOT testing for drugs and alcohol – are generally qualified to be Inflight Crewmembers.

the ADA or state law because she held a "safety sensitive" position in which she cared for patients and could not perform the essential functions of her job "during the indefinite periods in which she was incapacitated." See 713 F.3d 1149 (8th Cir. 2013). Similarly, in Gault v. University of Chicago, the U.S. District Court for the Northern District of Illinois held that a nurse with epilepsy employed in the burn unit of a hospital was not qualified for her position as a matter of law because of her susceptibility to incapacitating seizures. See 90 Civ. 0321, 1991 WL 38757 (N.D. Ill. Mar. 19, 1991) (Plaintiff experienced symptoms including "aura during which she stares blankly," "seizures in which she experiences convulsions, falls to the floor and loses consciousness," and confusion during which she could not perform her duties).

Courts have also found plaintiffs who suffer from other medical conditions not to be "qualified individuals" where the condition in question simply limited the individual's ability to perform the essential functions of his or her position. See, e.g., Andujar, 583 F. Supp. 2d at 217-18 (former mall security guard with Cerebral Palsy who could not arrive at work on time was not a "qualified individual" where he was unable to perform the "essential function" of ensuring that the mall was prepared to open for customers by 10:00 a.m.); Jones, 696 F.3d at 88 (employee was not qualified where he could not pass the FINRA Series 65 exam due to his disability). Moreover, where employers are charged, through government license, with the safety and welfare of citizens, courts are especially reluctant to second-guess employers' decisions as to an employee's qualifications. For example, in EEOC v. Amego, Inc., the First Circuit declined to question the determination of an employer (which ran a residence for disabled individuals, was licensed by two state agencies, and required by the state to take steps to assure the safety of its patients) that an employee's depression rendered her unqualified to perform the essential job function of administering and monitoring residents' medication. See 110 F.3d 13,

146-47 (1st Cir. 1997) (the employer "stood the risk of losing its licenses and its ability to care for any of its clients" had a client been harmed by the plaintiff, a context which "added weight to the risks" the employer deemed the employee caused). Moreover, the First Circuit has held that where the "essential function" at issue implicates the safety of others, the plaintiff is required to "demonstrate that []he can perform those functions in a manner that will not endanger others." E.E.O.C. v. Amego, 110 F.3d 135, 144 (1st Cir. 1997). In Bryant v. Caritas Norwood Hosp., for example, this Court found that where plaintiff's disability precluded her from lifting patients – one of the plaintiff's essential functions as a staff nurse – the plaintiff's suggestion that other staff members could perform this function on her behalf was unreasonable in light of the safety-sensitive nature of the position, and provided "yet another reason" why the plaintiff's disability discrimination claims failed. See 345 F. Supp. 2d 155 (2004).

Here, it is without question that flight attendants are responsible for the safety and welfare of the passengers onboard JetBlue aircrafts. (Statement at ¶¶ 25-29.) Specifically, flight attendants' duties include responding to emergencies in which they take the lead in aiding passengers, providing reassurance during episodes of turbulence, administering first aid, providing direction and instruction for emergency landings, assisting passengers out of emergency exits and with emergency equipment, and evacuating passengers from the plane. (Statement at ¶¶ 25-29.) Simply put, flight attendants are charged with protecting the lives of passengers in their care during events like emergency landings or any other disaster. But Plaintiff is unable to fulfill these safety-sensitive responsibilities.[7] Plaintiff testified that he has experienced between 20-25 seizures since his diagnosis at age 14, despite the fact that he takes a

---

[7] Plaintiff's own characterization of his epilepsy additionally renders him unqualified to perform the day-to-day functions of a flight attendant (such as serving customers during flight and aiding with boarding and baggage), (Statement at ¶¶ 25-29), which certainly require consciousness. Plaintiff testified that, due to his epilepsy, he experiences seizures which include loss of consciousness, confusion, light headedness, and trouble hearing. (Statement at ¶ 8.)

medication called Tegretol to help control his seizures. (Statement ¶¶ 6, 9, 10.) Plaintiff also stated that when he does not take his medication at precisely the right time, he experiences seizures. (Statement at ¶ 13.) And further, Plaintiff testified that he experiences seizures even when he *does* take his medication in a timely manner, and that he in fact experienced an on-the-job seizure in January 2011, unrelated to any lapse in his medication, which rendered him unable to report to a flight on which he was scheduled to work because it was "not safe for [him] to be in a plane." (Statement at ¶¶ 14-15.) Accordingly, Plaintiff's own testimony establishes that his epilepsy is unpredictable and incapacitating, and that he could experience a seizure which renders him unfit for duty – particularly the duties related to the safety of JetBlue's passengers – at any time.

**b. Plaintiff Cannot Establish That He Was Discharged Because of His Disability.**

**i.** <u>Plaintiff's Demonstrably Specious Allegations.</u>

Despite Plaintiff's claims, the undisputed record in this case evidences that Plaintiff was terminated because he failed an initial Breathalyzer test, and refused to take a confirmation test – which JetBlue was required to treat as a failure by the FAA/DOT – in violation of JetBlue's zero tolerance policy on alcohol use. Plaintiff's "evidence" disputing JetBlue's contemporaneous, documentary record consists of specious allegations which are patently, and demonstrably, untrue. For example, during his deposition, Plaintiff claimed that he never submitted to an initial Breathalyzer test, and in fact, never signed the Alcohol Testing Form ("ATF"). (Statement at ¶¶ 122, 128-30.) Plaintiff theorized that his signature on the document was forged (although he had no idea who would have done so, or why). (Statement at ¶¶ 130-31.) And yet, in Plaintiff's November 8, 2011 EEOC Charge of Discrimination, he *admits* that he did indeed submit to an initial Breathalyzer test. (Statement at ¶¶ 155-56.) Further, Defendant's handwriting expert, Dr. Andrew Sulner, compared the signature on the ATF

with Plaintiff's signature on numerous other JetBlue documents (which Plaintiff admitted to signing) and concluded, without doubt, that Plaintiff did sign the ATF. (Statement at ¶ 132.) Finally, all of JetBlue's contemporaneous witness statements – not only from the alcohol tester, former JetBlue Breath Alcohol Technician ("BAT") Ahmad Malik ("Malik")[8], but from David Rodriguez, both of whom were present – recount that <u>both</u> S.M. and Plaintiff failed their initial tests, and that Plaintiff definitively refused to take a confirmation test despite being instructed, multiple times, that such refusal would be treated as a failure of the alcohol test. (Statement at ¶¶ 140-47, 159-69.) Accordingly, given the weight of evidence contrary to Plaintiff's claims – including Plaintiff's own prior inconsistent statements to the EEOC – Plaintiff's position should be disregarded by the Court. <u>See</u> <u>Hicks v. Ryan</u>, 13 Civ. 10709 (RGS), 2014 WL 250338, at *4 (D. Mass. Jan. 21, 2014) (disregarding plaintiff's "conclusory statements . . . belied by the evidence the defendant has produced" and granting defendant's motion for summary judgment).

  ii. <u>Legal Standard.</u>

   As referenced above, Plaintiff cannot establish the third prong of the *prima facie* test for disability discrimination because there is no evidence that he was discharged "because of" his disability. Where the facts demonstrate that an adverse employment decision is "not causally linked" either to an employee's disability or activities related to that disability, an employee's *prima facie* case will fail. <u>See, e.g.</u>, <u>Freadman v. Metro. Prop. & Cas. Ins. Co.</u>, 484 F.3d 91, 101 (1st Cir. 2007); <u>Daly v. Abbot Labs., Inc.</u>, 11 Civ. 12247 (GAO), 2013 WL 5328898, *4 (D. Mass. Sept. 23, 2013). It is well-settled in the First Circuit that temporal proximity will not, by itself, establish causation.[9]

---

[8] In or around late 2012 to early 2013, Malik was terminated for reasons wholly unrelated to his performance as a JetBlue BAT. (Statement at ¶ 83.)

[9] <u>See, e.g.</u>, <u>Wright v. CompUSA, Inc.</u>, 352 F.3d 472, 478 (1st Cir. 2003) ("[C]hronological proximity does not by itself establish causality...."); <u>Soileau v. Guilford of Maine, Inc.</u>, 105 F.3d 12, 16-17 (1st Cir. 1997) (acknowledging

Moreover, an employer's determination as to what constitutes a legitimate business reason for a personnel decision is entitled to deference in the absence of evidence of discriminatory intent, pretext, or animus.  See Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991) ("Courts may not sit as super personnel departments, assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions.").  See also Amego, 110 F.3d at 144-45 ("where the plaintiff has presented no discriminatory intent, animus, or even pretext, we think there should be a special sensitivity to the danger of the court becoming a super-employment committee").  In this case, Plaintiff points to nothing that should diminish that deferential accord, since *every piece* of evidence JetBlue reviewed in connection with Plaintiff's termination, including FAA and DOT regulations, mandated JetBlue's non-discriminatory actions.

   iii.  <u>All of the Documentary Evidence in This Case Establishes That Plaintiff Was Terminated for Failing His Initial Test and Refusing a Confirmation Test, and Not Because of His Epilepsy.</u>

An employer may rely on business records, supervisor statements or witness statements in making personnel decisions.  For example, in <u>Freadman</u>, the First Circuit affirmed a district court finding that an employer did not change a plaintiff's position "because of" the plaintiff's disability but rather because of the employee's poor performance – a record of which was established by the plaintiff's supervisor's statements that the plaintiff performed poorly in a meeting and did not follow his instructions.  See 484 F.3d at 101 (1st Cir. 2007).  An employer may additionally rely on the statements of medical professionals in making personnel decisions.  See <u>Bay v. Cassens Transportation Co.</u>, 212 F.3d 969 (7th Cir. 2000) (where medical examiner concluded that plaintiff's disability prevented him from obtaining a DOT-required license, court

---

that discharge occurred immediately after request for accommodation, but concluding that "[t]he larger picture undercuts any claim of causation").

refused to re-examine the propriety of the medical examiner's decision as to whether the individual did, in fact, meet DOT requirements).

Here, prior to making the decision to terminate Plaintiff, JetBlue's Manager Employment, Compliance and Drug Abatement Stacy Greenfield reviewed the following pieces of evidence describing Plaintiff's selection for reasonable suspicion alcohol testing and the results of his test:

- <u>The Signs and Symptoms Report Form.</u> The Signs and Symptoms Report Form was completed by Ayala and David Rodriguez on October 13, 2011. (Statement at ¶ 110.) It documents their observation of certain behaviors and factors which formed the basis of their decision to select Plaintiff for reasonable suspicion alcohol testing. (Statement at ¶¶ 109-11.) The document states that Plaintiff's eyes were red and glassy, that he was extremely nervous, and that he smelled of alcohol. Ayala further wrote, "As I was walking with Roberto, I noticed the odor of alcohol. David [Rodriguez] had noticed [Plaintiff's] nervousness on the [aircraft] while he was speaking to him." (Statement at ¶ 111.) Greenfield testified that she reviewed this document prior to terminating Plaintiff. (Statement at ¶ 112.)

- <u>The October 13, 2011 12:28 p.m. email from Ayala to Greenfield and others.</u> (Statement at ¶¶ 134-39.) The email states that according to David Rodriguez, Plaintiff "had an attitude" and was "acting very nervous" when Plaintiff boarded the plane, and that according to David Rodriguez and Malik, "Roberto had failed the first sobriety test," and "Roberto had refused a secondary test before he fell to the ground." (Statement at ¶ 137.) During her deposition, Ayala testified that she composed the email after speaking with David Rodriguez because she and David Rodriguez decided that she would communicate both of their observations to others at JetBlue.[10] (Statement at ¶ 138.) Greenfield reviewed this email prior to terminating Plaintiff. (Statement at ¶ 139.)

- <u>The Alcohol Testing Form.</u> (Statement at ¶¶ 113-33.) The ATF reflects that Plaintiff *did* take an initial Breathalyzer test and scored a result of .048, which means Plaintiff failed the test (anything higher than a .02 is a failure) and refused to take a confirmation test. (Statement at ¶¶ 117-18, 120.) Moreover, the ATF is signed by Plaintiff under the certification which states "I certify that I am about to submit to alcohol testing [and] that the identifying information provided on this form is true and correct." (Statement at ¶¶ 116, 119.) The ATF also states that Plaintiff "refused to sign screen test results" and "refused to complete confirmation test." (Statement at ¶ 120.) The ATF was completed and signed by Malik. (Statement at ¶ 115.) Greenfield reviewed the ATF before she terminated Plaintiff. (Statement at ¶ 133.)

---

[10] David Rodriguez's recollection as stated in Ayala's email is supported by his declaration which JetBlue obtained in connection with its response to Plaintiff's EEOC Charge. (Statement at ¶¶ 159-167.)

- The October 13, 2011 10:15 a.m. and 6:50 p.m. emails from Malik to Greenfield.
(Statement at ¶¶ 140-48.) Greenfield testified that prior to making the decision to remove
Plaintiff from his safety-sensitive duties – which she was required by the FAA and DOT
to do any time an employee failed an alcohol test – she reviewed emails from Malik and
spoke with him by telephone. (Statement at ¶ 147.) Malik's first email to Greenfield, at
10:15 a.m. on October 13, 2011, stated that Plaintiff's "screen test was .048 and he
refused to complete the confirmation test." (Statement at ¶ 141.) Malik's second email
to Greenfield, at 6:50 p.m. on October 13, 2011, states the following:

> [Plaintiff's] screen test was done at 8:49 a.m., and the results were .048. I asked
> the crewmember to sign the test results, when at that moment he collapsed to the
> floor. I instructed the supervisor David [Rodriguez] to call 911, and I attempted
> to talk to the crewmember. The crewmember stated he was feeling weak and was
> disoriented. Emergency medical services arrived approximately 15 minutes later
> and began to treat the crewmember. After examining him, the paramedic
> determined the crewmember was alert and could continue the testing procedure. I
> asked the crewmember to complete the confirmation test, and he refused. I
> informed him that refusing to complete the test would be considered a refusal and
> would have the same consequences as a positive test result. The crewmember
> refused again, and ask [sic] to leave. At that point I documented the incident on
> the alcohol testing form, and ended the test. Both crewmembers were escorted
> out of the office by the inflight supervisor. (Statement at ¶ 143.)

Greenfield reviewed both emails before terminating Plaintiff. (Statement at ¶ 148.)

- The Acknowledgment of JetBlue's Zero Tolerance Policy signed by Plaintiff at the
commencement of his employment with JetBlue. (Statement at ¶¶ 16-24.) Greenfield
testified that prior to making the decision to remove Plaintiff from his safety-sensitive
duties, she reviewed the Acknowledgement of JetBlue's Drug and Alcohol policy signed
by Plaintiff which stated that he understood JetBlue's Drug and Alcohol policy.
(Statement at ¶¶ 22, 147.) The zero tolerance Policy states that Crewmembers who
receive a positive test result, or refuse to test, will be terminated. (Statement at ¶¶ 20-21.)
Greenfield reviewed the Acknowledgement before making the decision to terminate
Plaintiff. (Statement at ¶ 147.) Plaintiff testified that he had knowledge of the zero
tolerance policy during his employment." (Statement at ¶ 23-24.)

As set forth above, JetBlue considered statements from supervisor witnesses to Plaintiff's test,

statements from its own tester, as well as its own business record, the ATF, and its own policies,

before concluding that Plaintiff had to be removed from duty and then terminated. All of those

pieces of evidence tell the exact same story: that Plaintiff failed the initial alcohol test and then

refused to take the confirmation test. Whether Plaintiff collapsed before or after he refused the

confirmation test was immaterial to JetBlue's decision; regardless of when the collapse occurred,

all of the evidence JetBlue had indicated that Plaintiff *clearly refused* to take the confirmation test. Accordingly, Greenfield stated that Plaintiff was being terminated in accordance with his violation of the zero tolerance policy, which correlates to all of Plaintiff's termination paperwork. (See Statement at ¶¶ 3, 147.)

Moreover, employers are permitted to rely on the opinions of those in the medical community in making employment decisions, as Malik and Greenfield did here. See Murphy v. UPS, 527 U.S. 516 (1999) (court declined to "second-guess" a physician's determination as to plaintiff's DOT certification); Campbell v. Federal Express Corp., 918 F. Supp. 912, 918 (D. Md. 1996) (an employer is "entitled to rely on medical determinations made by its medical professionals"). As stated in his October 13, 2011 6:50 p.m. email, Malik told Greenfield that "[a]fter examining [Plaintiff], the paramedic determined the crewmember was alert and could continue the testing procedure," at which time Malik "asked the crewmember to complete the confirmation test," which Plaintiff refused to do. (Statement at ¶ 145.) In other words, Malik stated that he was told by emergency services personnel that Plaintiff could physically and mentally continue the test, and, only following that advisement, did Malik ask Plaintiff to submit to the confirmation test – multiple times – before recording Plaintiff's response as a refusal. (Statement at ¶ 145.) Further supporting Malik's assessment is (1) Plaintiff's own testimony that he was conscious following his seizure (Statement at ¶ 124), and (2) David Rodriguez's observations that Plaintiff fell to the ground (*after* refusing the confirmation test) but remained conscious. (Statement at ¶ 165.)

iv. JetBlue's Treatment of Plaintiff's Refusal of the Confirmation Test as a Failure Was Not Discriminatory but Required by the FAA/DOT, Which Also Prohibited Cancellation of the Test.

Regulations under the ADA provide a legal defense for employers to disability claims if the "challenged action is required or necessitated by another Federal law or regulation."

<u>Melman v. Metro. Gov't of Nashville</u>, 08 Civ. 01205 (WJH), 2010 WL 3063805, *7 (M.D. Tenn. Aug. 3, 2010) (citing 29 C.F.R. § 1630.15(e)).  "The admittedly few courts that have considered this provision have accepted it as a complete defense to an ADA claim, as long as the defendant could show that the action was, in fact, required by another Federal law."  <u>Id.</u> (citing <u>E.E.O.C. v. Murray, Inc.</u>, 175 F. Supp. 2d 1053, 1066 (M. D. Tenn. 2001)).

Here, FAA/DOT regulations (as well as JetBlue's own policies) required JetBlue to consider the evidence of Plaintiff's refusal of the confirmation test as a failure of the alcohol test.  <u>See</u> 49 C.F.R. §40.261(b) ("As an employee, if you refuse to take an alcohol test, you incur the same consequences specified under DOT agency regulations for a violation of those DOT agency regulations.").  Moreover, JetBlue was required by the same regulations to report Plaintiff's refusal immediately.  <u>See</u> 49 C.F.R. §40.261(c) ("As a BAT … when an employee refuses to test … you must terminate the portion of the testing process in which you are involved, document the refusal on the ATF … immediately notify the DER [Designated Employee Representative] by any means (e.g., telephone or secure fax machine) that ensures the refusal notification is immediately received.").  As stated above, JetBlue, and Greenfield in particular, was presented with strong evidence – the email summarizing the observations of supervisors Ayala and David Rodriguez, the ATF, and the two emails from BAT Malik – which *all* confirmed that Plaintiff failed his initial test and definitively refused to take a confirmation test.  *None* of those documents deviates from that set of facts.  Thus, JetBlue was *required* by federal law to remove Plaintiff from duty.[11]

Significantly, although Plaintiff's Complaint cites to numerous FAA regulations in support of his claim that JetBlue should have cancelled or postponed or otherwise excused

---

[11] Pursuant to 49 C.F.R. § 40.23(c), an employer who receives an alcohol test result of 0.04 or higher must immediately remove the employee from performing safety-sensitive functions.  The regulations state that the employer must "not wait to receive the written report of the result of the test."  (Statement at ¶ 77.)

him from the test, *none of them would have permitted cancellation of the test under the circumstances present here*, as set forth below:

- <u>FAA Regulation</u>: 49 C.F.R. §40.241(b)
  <u>Plaintiff's Claim</u>: "In violation of 49 C.F.R. §40.241(b), JetBlue did not ensure that when Mr. Rodriguez entered the testing site his test proceeded without delay."[12] (Complaint at ¶ 38.)
  <u>The Baseless Nature of Plaintiff's Claim</u>: Here, all of the evidence – apart from Plaintiff's conclusory assertions – establishes that there was no "undue delay." According to Plaintiff, he was removed from the plane for a reasonable suspicion alcohol test between approximately 7:08 a.m. and 7:18 a.m. (Statement at ¶ 66.) The ATF states that Plaintiff's initial Breathalyzer test took place at 8:48 a.m. – only, at most, one hour and forty minutes later (due to the fact that Malik was not on site and traveled from him home to conduct the test). (Statement at ¶¶ 84, 117.) Regardless, when Malik arrived, the test was performed without undue delay.[13] (Statement at ¶¶ 66, 117.)

- <u>FAA Regulation</u>: 49 C.F.R. §40.241
  <u>Plaintiff's Claim</u>: "JetBlue violated its own policies and 49 C.F.R. §40.241 when it failed to ensure that when an employee needs medical attention that it is not delayed to conduct a test."[14] (Complaint at ¶ 75.)
  <u>The Baseless Nature of Plaintiff's Claim</u>: At no time did JetBlue delay medical attention for Plaintiff. According to Malik's October 13, 2011, 6:50 p.m. email to Greenfield, when Plaintiff collapsed Malik immediately asked David Rodriguez to call 911, and emergency medical services arrived 15 minutes later. (Statement at ¶ 144.) Only once the paramedic determined that Plaintiff was alert and could continue the test did Malik ask Plaintiff if he would take the confirmation test. (Statement at ¶ 145.)

- <u>FAA Regulation</u>: 49 C.F.R. §40.243(d)
  <u>Plaintiff's Claim</u>: "In violation of 49 C.F.R. §40.243(d), JetBlue refused to show [Plaintiff] the test results and instead continued to insist that he sign a Crewmember Guidance Report."[15] (Complaint at ¶ 55.)
  <u>The Baseless Nature of Plaintiff's Claim</u>: Even assuming, for the purposes of the instant Motion only, that Plaintiff was not shown his initial Breathalyzer test result of .048, nowhere

---

[12] 49 C.F.R. §40.241(b) states that "when the employee enters the alcohol testing site, you [the BAT] begin the alcohol testing process without undue delay. For example, you must not wait because the employee says he or she is not ready or because an authorized employer or employee representative is delayed in arriving." (Statement at ¶ 71.)

[13] FAA regulations require cancellation of a test on the basis of undue delay only where the test is not administered within 8 hours of the determination of reasonable suspicion. <u>See</u> 14 C.F.R. § 120.217(d)(4)(i). For tests administered between two and eight hours after a determination is made that reasonable suspicion exists to test the individual for alcohol use, FAA regulations only require the employer maintain a record stating the reason for the delay. <u>See id.</u> Clearly, the one hour and forty minute "delay" in testing does not fall under either of these categories.

[14] 49 C.F.R. §40.241(b)(2) states that "[i]f the employee needs medical attention (e.g., an injured employee in an emergency medical facility who is required to have a post-accident test), do not delay this treatment to conduct a test." (Statement at ¶ 71.)

[15] 49 C.F.R. §40.243(d) states that the BAT must "show the employee the displayed test result." (Statement at ¶ 71.)

do the FAA or DOT regulations state that such technical failure may result in the cancellation or voiding of the test result.

- **FAA Regulation**: 49 C.F.R. §40.271(a)(1)
  **Plaintiff's Claim**: "JetBlue violated 49 C.F.R. §40.271(a)(1) and 49 C.F.R. §40.271(c), as well as its own policies, which provides [sic] that if you 'become aware of any event that will cause the test to be cancelled, you must try to correct the problem promptly, if practicable,' and 'if you cannot correct the problem, you must cancel the test.'" (Complaint at ¶ 60.) "Because Mr. Rodriguez was physically unable to take the breathalyzer test and the confirmation test the test(s) should have been cancelled pursuant to 49 C.F.R. §40.271(c)." (Complaint at ¶ 86.)
  **The Baseless Nature of Plaintiff's Claim**: Plaintiff's recitation of 49 C.F.R. §40.271(a)(1) omits a critical reference – to 49 C.F.R. §40.267 (the full text of §40.271(a)(1) states "[i]f, during or shortly after the testing process, you [the BAT] become aware of any event that will cause the test to be cancelled (<u>see</u> § 40.267), you must try to correct the problem promptly, if practicable. You may repeat the testing process as part of this effort."). (Statement at ¶ 72.) Section 40.267, however, limits what "event" "will cause the test to be cancelled" to those involving BAT error or a mechanical error with the device itself. (Statement at ¶ 72.) The regulation makes *no* reference to any other type of event which can or should result in the cancellation of the alcohol test.

- **FAA Regulation**: 49 C.F.R. §40.265(c)
  **Plaintiff's Claim**: "In accordance with 49 C.F.R. §40.265(5)(c)(1)(iv)(A), Mr. Rodriguez's breathalyzer test(s) should have been cancelled due to a medical emergency." (Complaint at ¶ 71.)
  **The Baseless Nature of Plaintiff's Claim**: 49 C.F.R. §40. 265(5)(c)(1)(iv)(A) references an individual's inability to provide "a sufficient amount of breath." (Statement at ¶ 72.) (In fact, according to 49 C.F.R. §40.243(c), to use the Breathalyzer properly employees must be able to "blow steadily and forcefully into the mouthpiece for at least six seconds or until the device indicates that an adequate amount of breath has been obtained"). (Statement at ¶ 71.) This is referred to in the regulations as "shy lung." 49 C.F.R. §40.261(c). In such situations, and only in such situations, must the employee obtain an evaluation from a physician regarding his or her "failure to provide a sufficient specimen," which may result in cancellation. (Statement at ¶ 76.) Contrary to Plaintiff's allegations, 49 C.F.R. §40.265(5)(c)(1)(iv)(A) is inapplicable here because Plaintiff does not, and cannot, allege any issue with the *amount* of breath blown into the Breathalyzer device; rather, he alleges that his epilepsy prevented him from submitting to the tests at all.

Accordingly, while test cancellation is permitted in situation involving BAT error, mechanical failure, or a physician-certified "shy lung" condition, Plaintiff does not even allege that any of those circumstances were present here. Thus, as a matter of law JetBlue could not have cancelled or otherwise exempted Plaintiff from the test. For public policy reasons,

however, to permit Inflight personnel to evade alcohol testing, despite the presence of reasonable suspicion, whenever they have a claimed medical condition would completely hobble the FAA/DOT's ability to regulate the industry and, even more importantly, pose a grave danger to the public.

v. <u>In Fact, Discovery in This Case Revealed That Plaintiff Reported to Work While Drunk, Further Supporting JetBlue's Non-Discriminatory Reasons for His Termination.</u>

As discussed above, Plaintiff fails to establish that he was terminated because of his disability; in addition, however, during discovery JetBlue learned of new evidence supporting its decision to terminate Plaintiff for alcohol use.

The totality of the evidence in this case indicates that Plaintiff consumed alcohol prior to reporting for duty on October 13, 2011, in clear violation of JetBlue policy, and was in fact drunk when he boarded his scheduled flight:

- The record of Plaintiff's visit to the Jamaica Hospital emergency room on October 13, 2011 indicates that Plaintiff was *diagnosed with acute alcohol intoxication*. (Statement at ¶ 153 ("You have been diagnosed with sudden (acute) alcohol intoxication. This means that the level of your blood alcohol was tested above the legal limits.")) The hospital records further specify that the hospital performed a lab screening for alcohol on a sample of Plaintiff's blood, which resulted in a finding of "Abnormal" and that, "per [the] EMS," hospital staff were informed that Plaintiff "tested positive for alcohol test at work" with a blood alcohol content ("BAC") of .048. (Statement at ¶ 154.)

- On October 12, 2011, upon arriving at the hotel where they were to stay prior to their scheduled October 13, 2011 flight, Plaintiff and S.M. informed JetBlue Crewmember Marci Munroe ("Munroe"), who was "paired" with Plaintiff and S.M. for the October 13, 2011 flight, that they were going to the hotel bar for drinks that night and asked Munroe if she would join them. (Statement at ¶¶ 30, 35.)

- Plaintiff himself testified that he drank alcohol during the evening of October 12, 2011. (Statement at ¶ 40.)

- Plaintiff told his own primary care physician, Dr. Sukhvinder Gulati, that he consumed alcohol the night before his seizure on October 13, 2011.[16] (Statement at ¶ 40.) Moreover,

---

[16] Although Plaintiff attended a scheduled appointment with Dr. Gulati on October 25, 2011, about two weeks after his alleged October 13, 2011 seizure, *he never told her he had recently experienced a seizure*. (Statement at ¶ 170.)

Dr. Gulati testified, and her records reflect, that she cautioned Plaintiff numerous times not to drink alcohol while on Tegretol, since doing so could result in a higher risk of epileptic episode (Statement at ¶ 41.)

- On October 13, 2011, Ayala witnessed S.M. tell the flight's pilot that S.M. and Plaintiff went into "the City" the previous night. (Statement at ¶ 56.) Ayala also witnessed S.M. tell Malik that she had stopped drinking at midnight; since S.M. and Plaintiff were together that night (and in fact spent the night together in the same hotel room, which Plaintiff readily admits), it stands to reason that he stopped drinking around the same time. (Statement at ¶¶ 37, 38, 99.)

Based on the totality of the evidence produced during discovery, including, most significantly, Plaintiff's medical diagnosis of "acute alcohol intoxication" *after* he took the alcohol test, it is clear that Plaintiff was drunk when he reported for duty on the morning of October 13, 2011.

## C. **PLAINTIFF CANNOT ESTABLISH THAT JETBLUE'S REASON FOR HIS TERMINATION WAS A PRETEXT FOR DISCRIMINATION.**

Assuming arguendo that Plaintiff establishes a *prima facie* case of discrimination, a Court will examine whether JetBlue's stated legitimate, non-discriminatory reason for his termination was pretext for disability discrimination. In analyzing whether a defendant's stated reason for undertaking an adverse employment action against a plaintiff was pretext, the burden rests on the plaintiff, "unassisted by the original presumption," to show that the defendant's reason was advanced merely to disguise its real reason for terminating the plaintiff's employment, his disability. Furtado v. Standard Parking Corp., 820 F. Supp. 2d 261, 272 (D. Mass. 2011) (citing Freeman v. Package Mach. Co., 865 F.2d 1331, 1336 (1st Cir. 1988)). A plaintiff "has to clear two significant hurdles before he is able to show pretext." Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 (1st Cir. 2005). First, he must refute the clear evidence put forward by the defendant showing that it was a specific wrong, and not disability, that

---

Dr. Gulati testified that she always asked Plaintiff, at each appointment, whether he had recently experienced a seizure, and she knew that on that day, he had not disclosed a seizure to her because her notes indicate that "[h]is seizures has [sic] been well-controlled [sic] for many years." (Statement at ¶ 171-73.) Tellingly, Plaintiff waited until November 10, 2011, after filing his Charge of Discrimination with the EEOC on November 8, 2011, to inform Dr. Gulati that he had experienced an epileptic seizure on October 13, 2011. (Statement at ¶¶ 151, 173.) Again, Plaintiff's own inconsistent statements critically erode his spurious allegations in this case.

constituted the real reason for his termination.  Id.  Second, he must advance evidence of his own showing that the defendant's asserted reason was a pretext hiding discrimination.  Id.; see also Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990) (plaintiff must "elucidate specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive").  Significantly, "[w]hile an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination."  Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n. 6 (1st Cir. 1979).

Here, Plaintiff does not, and cannot, refute JetBlue's evidence that he was terminated for failure of a reasonable suspicion alcohol test, and not because he has epilepsy. Nor has he shown, and he cannot show, that JetBlue's stated reason is a pretext for disability discrimination.  While Plaintiff testified to his own theories about JetBlue's alleged "[im]proper procedure" during the alcohol test,[17] he can point to no actual evidence of pretext.  Tellingly, not only can Plaintiff point to no similarly-situated employee treated differently from him, but the Crewmember terminated at the same time as Plaintiff for the very same offense – S.M. – had no disability of which JetBlue was aware.[18]  In sum, while Plaintiff may deem JetBlue's decision-making to have been erroneous, the record is devoid of evidence establishing that JetBlue was motivated by illegal discrimination.

---

[17] Plaintiff testified that he believed Ayala lied to cover up the fact that she "didn't follow proper procedure during the drug test when she was interacting with me before I had my seizure."  (See Statement at ¶ 95.)

[18] Like Plaintiff, S.M. now claims that an alleged disability invalidated her failure of the FAA/DOT alcohol test on October 13, 2011.  On or about August 12, 2012, S.M. filed a Charge of discrimination with the Massachusetts Commission Against Discrimination alleging that on September 1, 2012 – almost a year after the alcohol test – she was diagnosed with a yeast infection which augmented her Breathalyzer test results.  (Statement at ¶¶ 157-58.)  In her Charge, S.M. admits that at the time she was tested for alcohol, she (let alone JetBlue) was unaware that she even had the yeast infection.  (Statement at ¶¶ 157-58.)

## D. **PLAINTIFF'S PROPOSED ACCOMMODATIONS OF HIS DISABILITY ARE UNREASONABLE AS A MATTER OF LAW AND/OR WOULD HAVE POSED AN UNDUE HARDSHIP ON JETBLUE.**

Plaintiff appears to allege that by not cancelling or otherwise exempting him from the alcohol test, or permitting him to consume his medication after he was selected for reasonable suspicion testing, JetBlue failed to make reasonable accommodations of his disability. Plaintiff's claims fail as a matter of law.

### 1. **Plaintiff's Proposed Accommodations Are Unreasonable Because They Require JetBlue To Violate Federal Law And Exempt Him From An Essential Function – The Alcohol Test.**

To show that an employer has failed to provide a reasonable accommodation, a plaintiff must demonstrate: "1) that she is a qualified individual with a disability[19], 2) that the employer, despite knowing of the employee's physical or mental limitations, did not reasonably accommodate those limitations, and 3) that the employer's failure to do so affected the terms, conditions, or privileges of the plaintiff's employment." Cailler v. Care Alternatives of Massachusetts, LLC, 09 Civ. 12040 (DJC), 2012 WL 987320, *4 (D. Mass. Mar. 23, 2012) (citing Flanagan-Uusitalo v. D .T. Indus., Inc., 190 F. Supp. 2d 105, 115 (D. Mass. 2001); see also 29 C.F.R. § 1630.2(o)(1)(ii) ("The term reasonable accommodation means ... [m]odifications or adjustments to the work environment ... that enable a qualified individual with a disability to perform the essential functions of that position.") An employer who fails to make reasonable accommodations violates the ADA unless it can that the accommodation would impose an undue hardship. See 42 U.S.C. § 12112(b)(5)(A).[20]

---

[19] For the reasons discussed above (see Point B.2.a. *supra*), Plaintiff has not demonstrated, and cannot demonstrate, that he was a qualified individual with a disability.

[20] Questions of reasonable accommodation and undue hardship are analyzed by the same methodology under Massachusetts and Florida disability discrimination laws as under the ADA. See Greenberg, 498 F.3d at 1263-64; Labonte v. Hutchins & Wheeler, 678 N.E.2d 853 (Mass. 1997); Fiumara v. President & Fellows of Harvard Coll., 327 F. App'x 212, 212-13 (1st Cir. 2009) (citing Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 772

Significantly, requested accommodations that require a party to violate federal law *cannot* be reasonable as a matter of law. <u>See</u> <u>E.E.O.C. v. Allendale Nursing Centre</u>, 996 F. Supp. 712, 718 (W. D. Mich. 1998); <u>see also</u> <u>Albertsons, Inc. v. Kirkingburg</u>, 527 U.S. 555 (1999) (stating that employers have an "unconditional obligation to follow the [DOT] regulation[s] and [a] consequent right to do so"); <u>Bay</u>, 212 F.3d at 974 ("The ADA does not override health and safety standards established under other federal laws") (internal citations omitted); <u>Melman</u>, 2010 WL 3063805, *10 (M.D. Tenn. Aug. 3, 2010) ("As to Plaintiff's requested accommodation, if such requests violate DOT regulations, the requests are unreasonable as a matter of law"). Further, the ADA implementing regulations specify a defense to a charge of discrimination where an action is "required or necessitated by another Federal law or regulation." <u>See</u> 29 C.F.R. § 1630.15(e).

Furthermore, in considering a requested accommodation, "an employer need not exempt an employee from performing essential functions[.]" <u>See</u> <u>Mulloy v. Acushnet Co.</u>, 03 Civ. 11077 (DPW), 2005 WL 1528208, *10 (D. Mass. June 20, 2005), aff'd, 460 F.3d 141 (1st Cir. 2006). To request elimination of an essential function as an accommodation is "not, as a matter of law, a reasonable or even plausible accommodation." <u>Id.</u> (citing <u>Mason v. Avaya Communications, Inc.</u>, 357 F.3d 1114, 1122-23 (10th Cir. 2004)).

In this case, Plaintiff proposes the following accommodations of his disability: (i) "[B]eing allowed to take his medication promptly" (Compl. ¶ 119); (ii) Being "given the opportunity to take the breathalyzer test under different circumstances" (Compl. ¶ 119); or, (iii) Cancelling the alcohol test (Compl. ¶¶ 60, 71, 79-82, 86-87; Pl. Tr. at 156-157).[21] (Statement at

---

N.E.2d 1054, 1063 (Mass. 2002) ("State law standards for [] disability claim under Mass. Gen. L. ch. 151B, § 4 (2009) are not more generous [] than federal law standards.").

[21] During his deposition, Plaintiff was asked to articulate the way in which JetBlue should have accommodated his disability and was unable to do so. (Statement ¶ 175.)

¶ 95.)  Yet, as discussed above, Plaintiff fails to grasp that pursuant to FAA/DOT regulations, *alcohol tests may only be cancelled where the Breathalyzer device itself is not functioning, the BAT makes an error, or the Crewmember has a physician-certified "shy lung" condition.*  See Point B.2.b.iv. *supra.*  Here, it is undisputed that none of those circumstances were present.  Moreover, FAA/DOT regulations also specify that once selected for reasonable suspicion testing, employees are not permitted to consume or drink anything, including medication.[22]  (Statement at ¶ 94.)

Accordingly, Plaintiff's claim that cancelling the test would have been a reasonable accommodation is baseless.  In fact, cancelling his test would have placed JetBlue out of compliance with federal law.  Moreover, it is beyond peradventure that exempting Plaintiff from taking an alcohol test when he was reasonably identified as having consumed alcohol in violation of JetBlue policies is tantamount to eliminating an essential function of Plaintiff's position.  See Point B.2.a.i *supra.*  For these reasons, Plaintiff has failed to demonstrate that his proposed accommodations are reasonable for an FAA/DOT-regulated employer such as JetBlue.

**2.   Assuming Plaintiff's Proposed Accommodations Were Reasonable, They Would Have Posed an Undue Hardship on JetBlue for the Same Reasons.**

It is well-settled that if a plaintiff succeeds in carrying his burden of demonstrating the existence of a reasonable accommodation, the defendant then has the opportunity to show that the proposed accommodation is an undue hardship.  Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001).  Pursuant to the interpretive regulations

---

[22] Although consuming anything while awaiting the alcohol test is forbidden by DOT 49 C.F.R § 40.251 (Statement at ¶ 94), Ayala testified that she was not aware of the prohibition, and accordingly, that she and David Rodriguez permitted Plaintiff and Miranda to drink water and chew gum while they were waiting for Malik to arrive and perform the tests.  (Statement at ¶ 89.)  Ayala denies that Plaintiff ever asked her or David Rodriguez whether he could take his medication, denies that she forbid him from doing so, and stated that he could have taken his medication at any time while he was awaiting the test.  (Statement at ¶ 92.)  Nevertheless, assuming for the purposes of the instant motion only that Plaintiff did ask permission to take his medication, and that JetBlue denied that request, such denial was required by federal law, as stated above.

promulgated by the EEOC regarding the ADA, "[u]ndue hardship means, with respect to the provision of an accommodation, significant difficulty or expense incurred by a covered entity." 29 C.F.R. § 1630.2(p)(1). In determining such "difficulty or expense," the factors to be considered include "[t]he impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties." 29 C.F.R. § 1630.2(p)(2)(v).

This court has held that it is an undue hardship on an employer to exempt an employee from performing essential functions of the employee's job. See <u>Bryant</u>, 345 F. Supp. at 171; <u>see also</u> <u>Phelps v. Optima Health, Inc.</u>, 251 F.3d 21, 25-27 (1st Cir. 2001) ("an employer need not exempt an employee from performing essential functions, nor need it reallocate essential functions to other employees."). Here, as discussed above, Plaintiff's claimed inability to perform an essential function of the flight attendant position – submission to alcohol testing as mandated by the FAA/DOT in cases where reasonable suspicion exists, as it did here – renders him unqualified. <u>See</u> Point B.2.a. *supra*. For the same reasons, Plaintiff's claim that JetBlue should have accommodated his disability by cancelling or otherwise excusing him from the test also fails as a matter of law.

## E.  **PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FMLA.**

**1.  Plaintiff's Interference Claims Fail Because He Never Requested Leave, And Even If He Did, He Would Have Been Terminated Regardless.**

To meet his burden on a claim of interference with FMLA rights, an employee must show an entitlement to the leave by demonstrating that: (1) he was an "eligible employee" under the FMLA; (2) the defendant is a "covered employer"; (3) the employee gave adequate notice of his request for the protected leave; and (4) the leave was necessitated by reasons covered by the Act. <u>McArdle v. Town of Dracut/Dracut Pub. Sch.</u>, 909 F. Supp. 2d 48, 54-55

(D. Mass. 2012), aff'd, 732 F.3d 29 (1st Cir. 2013).  Where termination would have occurred regardless of the request for FMLA leave, an employee may lawfully be terminated even where termination prevents him from exercising his rights under the FMLA.  Furtado, 820 F. Supp. 2d at 280 ("[a] reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory.").

### a. There is No Evidence That Plaintiff Requested FMLA Leave from JetBlue in Connection with the October 13, 2011 Incident.

In general, when the employee can foresee that he will need FMLA leave, he has an obligation to give a thirty-day advance notice to the employer.  29 U.S.C. § 2612(e)(2)(B) (2004).  When the employee cannot foresee that he will need a leave, however, he must still give notice to the employer, but may do so "as soon as practicable under the facts and circumstances of the particular case."  29 C.F.R. 825.303(a).[23]

Here, Plaintiff offers no evidence that he ever requested FMLA leave from any JetBlue employee; in fact, he testified that his only FMLA-related request was made in early 2011, but did not even involve a request for leave.[24]  As such, his FMLA claim fails.

---

[23] Courts routinely decline to apply the theory of "constructive notice" in the FMLA context.  In Scobey v. Nucor Steel–Arkansas, the Eight Circuit explained the inapplicability of constructive notice to the FMLA in light of recent revisions by the DOL to FMLA notice requirements, before concluding that "[n]ow that the DOL has nullified the regulatory basis for the doctrine, we decline to create a constructive-notice exception to an employee's 'affirmative duty,' to notify his or her employer of the need for leave that might be FMLA-qualifying."  Scobey, 580 F.3d 781, 788 (8th Cir. 2009).  See also Bosley v. Cargill Meat Solutions Corp., 705 F.3d 777, 783 (8th Cir. 2013); Grosso v. UPMC, 857 F. Supp. 2d 517, 543 (W.D. Pa. 2012); cf. Mason v. Massachusetts Dep't of Envtl. Prot., 774 F. Supp. 2d 349, 368 (D. Mass. 2011) (where plaintiff had taken time off from work, utilized accrued sick and vacation time, and been hospitalized for an extended period, such circumstances "could have alerted defendants that plaintiff's use of leave was potentially-FMLA qualifying").

[24] During Plaintiff's deposition, Plaintiff was not able to articulate any basis for his FMLA claims.  When Defendant's counsel attempted to ask Plaintiff questions regarding the factual basis for his FMLA claims, Plaintiff's counsel repeatedly objected that such questions called for a legal conclusion and directed Plaintiff not to respond. (Statement at ¶ 175.)  To the extent that Plaintiff's FMLA claims are based on an alleged FMLA request in early 2011, such as claim fails as Plaintiff, by his own admission, did not request any leave at that time, but rather simply noticed JetBlue of his condition because Plaintiff felt he "needed some kind of protection in the event I got sick." (Statement at ¶ 174.)

### b. Assuming *Arguendo* That Plaintiff Did Request FMLA Leave, Which He Did Not, His Termination for Failing the Alcohol Test Was Unrelated to That Request.

Courts have held that where an employer would have terminated an employee regardless of an FMLA request, that employee's FMLA interference claim fails. See Furtado, 820 F. Supp. 2d at 280 (where employee was terminated for misuse of his company-issued cell phone, which occurred in the midst of the employee's request for FMLA leave, the court noted that "an employee may be terminated even if termination prevents him from exercising his rights under the FMLA" and that "a reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory").

Here, similarly, JetBlue had a legitimate non-discriminatory reason for terminating Plaintiff's employment – he failed a reasonable suspicion test for alcohol use. See Point B.2.b.iii *supra*. Accordingly, Plaintiff's FMLA interference claim fails.[25]

### 2. Plaintiff's FMLA Retaliation Claim Also Fails Because He Cannot Establish His *Prima Facie* Case or That the Real Reason for His Termination Was Pretextual.[26]

In Plaintiff's Fourth Cause of Action, Plaintiff additionally claims that JetBlue retaliated against him when it "applied the FMLA and its policies inconsistently with regards to Mr. Rodriguez." (Compl. ¶ 155.) To make out a *prima facie* case of retaliation under the FMLA, a plaintiff must show that: "(1) he availed himself of a protected right under the FMLA;

---

[25] To the extent Plaintiff's FMLA interference claim includes a claim of failure to provide Plaintiff with FMLA eligibility notice, such claim also fails. Even if JetBlue was under an obligation to affirmatively provide notice of FMLA rights to Plaintiff due to a "leave" in October 2011, in order to recover for technical violations of the FMLA notice requirements, an employee must "show that the lack of notice caused some prejudice." Dube v. J.P. Morgan Investor Serv., 201 Fed. Appx. 786, 788 (1st Cir. 2006); see also Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89, 91 (2002); McArdle v. Town of Dracut/Dracut Pub. Sch., 732 F.3d 29, 34 (1st Cir. 2013) ("even if we were to assume a violation of the notice requirements, [defendant] would be liable only for 'compensation and benefits lost by reason of the violation ... or any other relief tailored to the harm suffered.'"). Here, Plaintiff has presented no facts which demonstrate any harm which would have been avoided had JetBlue notified Plaintiff of any FMLA leave eligibility rights, especially in light of JetBlue's legitimate, non-discriminatory reason for terminating Plaintiff's employment.

[26] To the extent that Plaintiff claims that JetBlue "discriminated" against him in violation of the FMLA, which is not clear on the face of Plaintiff's Complaint and was not articulated in Plaintiff's deposition testimony, the analysis of such a "discrimination" claim and Plaintiff's retaliation claim will be the same. See Call v. Fresenius Med. Care Holdings, Inc., 534 F. Supp. 2d 184, 199 (D. Mass. 2008).

(2) he was adversely affected by an employment decision; (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action." Call, 534 F. Supp. 2d at 199 (citing Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 161 (1st Cir. 1998)). Assuming *arguendo*, however, that a plaintiff does make out a *prima facie* case of retaliation, he or she must rebut the employer's stated reason for the adverse action with evidence of pretext. D'Amico v. Compass Grp. USA, Inc., 198 F. Supp. 2d 18, 23-24 (D. Mass. 2002), aff'd, 52 F. App'x 524 (1st Cir. 2002); see also Call, 534 F. Supp. 2d at 199-200. As previously stated, *supra*, Plaintiff here is unable to establish that he availed himself of a protected right under the FMLA because he failed to place JetBlue on notice of an FMLA-qualifying leave. See Grosso, 857 F. Supp. 2d at 543. Nor can he establish a causal link between his termination and his FMLA request, since he admits he never even requested FMLA leave. (Statement at ¶ 174.) Finally, as Plaintiff is unable to rebut JetBlue's legitimate, non-retaliatory reason for his termination – his failure of a reasonable suspicion alcohol test (see Point B.2.b.iii *supra*) – and has otherwise failed to cite to any evidence of pretext in this case, Plaintiff's FMLA retaliation claim fails.

## F. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF IMPLIED CONTRACT.

In Plaintiff's Sixth Cause of Action, Plaintiff contends that JetBlue's Breathalyzer test, medical leave, and medical treatment policies formed the basis of an implied contract between Plaintiff and JetBlue, and that JetBlue breached that contract when it terminated him. (Compl. ¶¶ 163-168.) "In order to determine whether the terms of an employer's personnel manual or other document constitutes a binding contract, an court must consider whether or not the manual's terms were: (1) unilaterally modifiable, (2) merely hortatory, (3) negotiated in a particular instance, (4) specially emphasized by the employer, (5) seasonably accepted by the

employee, and (6) characterizable as specifying some period of employment (or, alternatively, some definitive limit on the otherwise fluid nature of at-will employment)." Cadrin v. New England Tel. & Tel. Co., 828 F. Supp. 120, 122 (D. Mass. 1993) (citing Pearson v. John Hancock Mut. Life Ins. Co., 979 F.2d 254, 256 (1st Cir. 1992)). A plaintiff alleging that a personnel manual forms the basis of an express or implied contract must "establish all of the elements ordinarily necessary for the formation of a contract." Biggins v. Hazen Paper Co., 953 F.2d 1405, 1422 (1st Cir. 1992), vacated on other grounds, 507 U.S. 604 (1993).

Here, Plaintiff can meet *none* of the criteria set forth above. All Crewmembers are presented with the same Blue Book and supplement(s) relevant to their positions upon commencement of employment (specified as at-will), the terms of which are not negotiable and are unilaterally modifiable by JetBlue. (Statement at ¶ 17, see also June 17, 2014 Affidavit of Jaclyn Leberfeld.) Moreover, to the extent this Court finds that the Blue Book did give rise to a contractual relationship between Plaintiff and JetBlue, Plaintiff's breach of contract claim still fails because, as discussed in detail above, JetBlue fully complied with its policies and procedures regarding alcohol testing and FMLA leave.

## CONCLUSION

Based on the foregoing, and for all of the reasons set forth in Defendant's Statement, the Abeysekera Aff. (and Exhibits A - W attached thereto), the Ayala Aff., the Leberfeld Aff., and the Corridan Aff., Defendant respectfully requests that the Court grant its summary judgment motion and dismiss Plaintiff's Complaint, in its entirety.

Dated:  June 18, 2014

Respectfully submitted,

s/ Samantha Abeysekera

*Admitted Pro Hac Vice*
Samantha.Abeysekera@akerman.com
AKERMAN LLP
666 Fifth Avenue, 19th Floor
New York, New York 10103
TELE: (212) 880-3829
FAX: (212) 905-6481

-and-

s/ Erik Winton

Erik Winton, BBO #600743
WintonE@jacksonlewis.com
JACKSON LEWIS LLP
75 Park Plaza, 4th floor
Boston, MA  02116
TELE: (617) 367-0025
FAX: (617) 367-2155

ATTORNEYS   FOR   DEFENDANT   JETBLUE
AIRWAYS CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 18, 2014.


/s/ Erik Winton

Jackson Lewis LLP